602 S.E.2d 330 (2004)
268 Ga. App. 603
In the Interest of B.B., a child.
No. A04A1006.
Court of Appeals of Georgia.
July 20, 2004.
*331 Kelley Dial, Cartersville, for Appellant.
Thurbert Baker, Attorney General, Shalen Nelson, Assistant Attorney General, Barry Haney, Neel & Smith, Cartersville, William Joy, Senior Assistant Attorney General, Laura Hyman, Assistant Attorney General, for Appellee.
BLACKBURN, Presiding Judge.
Following the juvenile court's finding that her child, B.B., was deprived, appellant, B.B.'s biological mother appeals, arguing that the juvenile court erred (1) in finding that she was incompetent to represent herself in appellate proceedings, and (2) in considering appellant's testimony after finding that she was not competent. For the reasons that follow, we affirm.
1. K.B. argues that the juvenile court erred in denying her request to represent herself, asserting that she knowingly and voluntarily waived her right to counsel. We find no error.
Pursuant to OCGA § 15-11-6(b), K.B., as a party to a deprivation case, has a statutory right to be represented by counsel. K.B. is clearly indigent. She has no verifiable job or income other than what she gets from the kindness of strangers or friends of hers. Therefore she is entitled to appointed counsel unless she waives the same.
"The question of whether or not a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this court unless such a determination is clearly erroneous." Miller v. State.[1] In analyzing whether K.B. knowingly and voluntarily waived her right to counsel, the juvenile court first noted that it had previously found K.B. to be mentally incompetent. At the time the psychologist, Dr. Moon, first evaluated her, she had severe mental illnesses, including distorted thinking and difficulty separating reality from fantasy. Her manner of testimony and demeanor in court supported Dr. Moon's findings. Dr. Moon opined in previous hearings that K.B. could attain competency if she would agree to take medication, and the court ordered K.B. to have a psychiatric evaluation to determine if medication would be helpful and appropriate. K.B., however, steadfastly refused this option.
Based on a subsequent interview with K.B. at the Bartow County Jail on December 1, 2003, Dr. Moon opined that her mental illnesses were worse, and that because of her thought disorder, K.B. could not make rational judgments and was not capable of making a knowing waiver of her rights. He specifically opined that K.B. was not able to assist her attorney in defending her case because of her mental illness. She had a psychotic disorder; she confused reality with fantasy; she could not follow the proceedings and sort things out in a systematic way. Although K.B. was intelligent and could, for a period of time, give the impression that she grasped the proceedings, over time it was clear that she did not.
The trial court found that no evidence had been presented that K.B.'s mental state had improved; to the contrary, it found that there was direct evidence from Dr. Moon and from the court's observation of K.B. in court that her mental state had deteriorated. Given her distortion of reality and fantasy, the trial court concluded that it would be unconscionable to find that K.B. could knowingly and intelligently waive her right to counsel.
These findings are not clearly erroneous. Accordingly, the juvenile court did not err in finding as a fact and concluding as a matter of law that K.B.'s current thought disorder prevents her from making rational judgments, that her delusional thinking prevents her from making a knowing and voluntary waiver of her right to be represented by counsel, and that she is not mentally competent *332 to represent herself in appellate proceedings.
2. K.B. maintains that the trial court erred in using her testimony as a basis for finding continuing deprivation of her child, B.B., after it determined that she was not a competent witness. Citing Dowdy v. Watson & Lewis,[2] K.B. points out that, "[g]enerally speaking, if during testimony, the competency of a witness becomes doubtful, the jury should be instructed to consider the question, and if they conclude that a witness is incompetent, they are not to consider his or her testimony." We find no merit to this argument.
Under OCGA § 15-11-2(8)(A), a "deprived child" is a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." Among the factors relevant to determining whether the child is without proper parental care and control is "[a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-94(b)(4)(B)(i). The definition of a deprived child, as contained in OCGA § 15-11-2(8), "focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Punctuation omitted.) In the Interest of J.P.[3]
In determining whether a parent suffers from a mental deficiency which renders her incapable of providing for a child, we have approved the juvenile court's consideration of any testimony, including that of the impaired parent, which sheds light on the central concern before the court, i.e., whether the parent is able to adequately provide for the child's needs. In In the Interest of A.L.E.,[4] we observed that expert witness testimony, coupled with medical reports, sufficed to establish a parent's medically verifiable deficiency and supported termination of parental rights; but, we went on to observe that "[a]ppellant's own disjointed testimony further evidenced the ravaging effects of her mental illness." Id. at 217(1), 546 S.E.2d 319. In In the Interest of A.M.L.,[5] we affirmed the juvenile court's finding that the mother's mental and emotional deficiencies left her child without proper parental care and control. In that case, "[t]he juvenile court hearing the mother's testimony specifically found that her actions in court demonstrated ongoing mental problems and that the mother's courtroom demeanor convinced the court that she would let her son down again." Id. at 123(1)(c), 527 S.E.2d 614. Finally, the testimony of a mother with mental illnesses was considered significant in In the Interest of J.H.,[6] in which, in support of the juvenile court's finding of mental deficiency, we noted the following:
Appellant also testified at the termination hearing. Although appellant could at times respond appropriately to the questions posed to her, the transcript shows that appellant would quickly deviate from the subject at hand. A large part of appellant's testimony was unresponsive and "incredible," and gave striking insight into her obviously deeply entrenched delusional system. The juvenile judge repeatedly directed appellant to respond to the questions asked, and the judge also questioned appellant in an attempt to gain pertinent and relevant information from her. Appellant repeatedly indicated that she was not going to take medication for her mental illness, that she did not believe that she required such medication, and that in the past she had been poisoned by medication *333 given to her while she was hospitalized because of her mental illness.
Id. at 256, 435 S.E.2d 753.
Evidence of K.B.'s mental state, similar to the evidence approved in the cases cited above, was introduced in the present case. At the December 2, 2002 adjudicatory hearing, the psychologist who had been asked by the court to evaluate K.B. testified that she was not competent to assist in her defense. The psychologist stated that K.B. confused reality with fantasy; he diagnosed her as suffering from delusional disorder, psychotic disorder, paranoid personality disorder, antisocial personality disorder, and cyclothymia, a mild version of bipolar disorder. The psychologist also stated that K.B.'s mental disorders would interfere with her ability to care for B.B.'s needs.
K.B., against the advice of counsel, also testified at the hearing. She told the court that she did not have mental problems and would not take medications to treat the diagnosed disorders. She also stated that she did not have a place to live, that she was unemployed, and that a friend would provide food and shelter for B.B. and her if B.B. was returned to her; she also said that if she could not afford to buy clothes for the child, friends and family would help. At the end of the hearing, the juvenile court found that K.B. was not competent to represent herself, and that B.B. was a deprived child. In reaching the conclusion that B.B. was deprived, it is clear from the cases cited above that the juvenile court did not err in considering K.B.'s testimony at the adjudicatory hearing.
Judgment affirmed.
BARNES and MIKELL, JJ., concur.
NOTES
[1] Miller v. State, 240 Ga. 110, 112, 239 S.E.2d 524 (1977).
[2] Dowdy v. Watson & Lewis, 115 Ga. 42, 41 S.E. 266 (1902).
[3] In the Interest of J.P., 267 Ga. 492, 480 S.E.2d 8 (1997).
[4] In the Interest of A.L.E., 248 Ga.App. 213, 546 S.E.2d 319 (2001).
[5] In the Interest of A.M.L., 242 Ga.App. 121, 527 S.E.2d 614 (2000).
[6] In the Interest of J.H., 210 Ga.App. 255, 435 S.E.2d 753 (1993).