A04A2162. IN THE INTEREST OF A. M. A., a child.
(607 SE2d 916)

BLACKBURN, Presiding Judge.

Following the termination of her parental rights in A. M. A., appellant, the biological mother of A. M. A., appeals, arguing that the juvenile court erred in: (1) terminating her parental rights in A. M. A.; (2) failing to appoint an attorney to represent A. M. A. at the termination hearing; and (3) failing to appoint an attorney to represent appellant at the termination hearing. For the reasons set forth below, we vacate the judgment and remand this case for a determination by the juvenile court of whether appellant waived her right to a court-appointed attorney, if any, and if not, whether appellant was indigent and entitled to an attorney.

1. We address first appellant's contention that the evidence was insufficient to support a finding of termination.

> The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.

(Citation and punctuation omitted.) *In the Interest of K. S. W.*[1]

Viewed in the light most favorable to the juvenile court's disposition of this case, the record shows that the Upson County Department of Family & Children Services ("DFACS") obtained an order to place A. M. A. in shelter care two days after her birth on April 26, 2003. On April 30, 2003, DFACS filed a petition for deprivation concerning A. M. A., and on the same day, the juvenile court held a 72-hour hearing. On May 8, 2003, the juvenile court entered a detention order finding probable cause that A. M. A. was deprived based on the facts that the court had granted nonreunification with respect to three of A. M. A.'s siblings, for whom appellant had been unable to complete a reunification case plan, and that appellant had pled guilty to cruelty to children stemming from her deprivation of these siblings.

The juvenile court held an adjudicatory hearing on May 13, 2003, and entered an unappealed order on May 22, 2003, finding A. M. A. deprived and awarding temporary legal custody of the child to

---

[1] *In the Interest of K. S. W.*, 233 Ga. App. 144, 147 (1) (503 SE2d 376) (1998).

DFACS. DFACS implemented a nonreunification plan which required appellant to cooperate in good faith with the child support recovery unit to support A. M. A., pay child support, and visit A. M. A.

On September 19, 2003, DFACS filed a petition for the termination of the parental rights of appellant and A. M. A.'s putative father. On October 7, 2003, DFACS renewed appellant's nonreunification plan. At a review hearing on that same date, the juvenile court informed appellant that a hearing on the termination of her parental rights would be held on November 13, 2003. Appellant confirmed that she had been served with the termination petition and indicated that she wished to retain her own attorney. The court advised her that she could "apply for a court appointed attorney if she wished, but that the termination hearing would take place on 11/13/03."

A hearing on the termination petition was held in the juvenile court on November 13, 2003. At the beginning of the hearing, an indigent defense attorney expressed to the court his uncertainty as to whether he was representing appellant since it was unclear whether she qualified as an indigent for appointed counsel. After hearing from counsel for DFACS, who reminded the court that appellant had been warned by the court that she needed to get an attorney and who opined that appellant's failure to appear with counsel was an attempt to delay the proceedings, the juvenile court relieved indigent counsel from representing appellant and proceeded with the termination hearing. On November 20, 2003, the juvenile court entered an order terminating the parental rights of appellant and A. M. A.'s putative father.[2]

> A termination of parental rights case involves a two-step analysis. First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.

---

[2] A. M. A.'s putative father does not contest the ruling of the court terminating his parental rights.

(Footnote omitted.) *In the Interest of V. M. T.*[3]

The first finding, i.e., that the child is deprived, has already been made. The juvenile court's deprivation order found that A. M. A. was deprived because of medical neglect, inadequate housing, substance abuse by her mother, her mother's unjustifiable failure to comply with a previously ordered reunification plan, and unabated causes of deprivation with respect to her siblings. Since appellant did not appeal the juvenile court's finding of deprivation, she is bound by that finding. *In the Interest of V. M. T.*, supra.

In making the second finding, whether the lack of proper parental care or control is the cause of the child's deprivation, the court may consider certain factors which "render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." Among these factors are "[a] medically verifiable deficiency of the parent's physical, mental, or emotional health," OCGA § 15-11-94 (b) (4) (B) (i), or "[e]xcessive use of or . . . abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances." OCGA § 15-11-94 (b) (4) (B) (ii). In this case, the evaluating psychologist diagnosed appellant as suffering from amphetamine abuse, as well as dependent personality disorder with schizoid, antisocial, passive/aggressive, and paranoid personality features. The psychologist testified that he considered these conditions indications of significant mental illness which would interfere with appellant's ability to raise a child. These factors support a finding that the lack of proper parental care or control is the cause of A. M. A.'s deprivation.

Other circumstances also support that finding. In making the second finding, the juvenile court may also consider:

> (iv) Egregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature; (v) Physical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child or of another child by the parent; and (vi) Injury or death of a sibling under circumstances which constitute substantial evidence that such injury or death resulted from parental neglect or abuse.

OCGA § 15-11-94 (b) (4) (B) (iv)-(vi). Many of these factors are present in this case.

---

[3] *In the Interest of V. M. T.*, 243 Ga. App. 732, 735-736 (3) (534 SE2d 452) (2000).

A. M. A.'s siblings were removed from appellant's care in April 2002 because of parental substance abuse, neglect, and failure to protect. At that time, the youngest of the siblings had diaper rash so severe that a whole layer of her skin was destroyed, leaving extensive scarring. Appellant, who tested positive for methamphetamine, often left three-year-old K. S., another sibling, with male strangers who were suspected of sexually abusing her. A caseworker indicated that when K. S. had any contact or visitation with her mother, she would regress, urinating on herself and becoming aggressive and destructive. K. S. has been diagnosed as having multiple psychiatric disorders, the cause of which, according to the psychologist who testified at the hearing, was appellant's gross neglect of the child. Appellant pled guilty to cruelty to children stemming from the deprivation of A. M. A.'s siblings and voluntarily surrendered her parental rights to those children. The evidence was more than sufficient to satisfy the second criterion.

The evidence also supports the juvenile court's finding that the cause of deprivation is likely to continue. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." *In the Interest of R. W.*[4] Since A. M. A.'s birth, appellant has failed to maintain stable employment; she was able to provide DFACS with only three paycheck stubs for the year and a half before the hearing. She has never paid any child support. Appellant has also failed to secure stable housing, having lived in six different homes in the six months prior to the hearing and often neglecting to inform DFACS that she had moved. Appellant missed seven of nineteen scheduled visits with her child. In addition, at the time of the hearing, forgery charges were pending against her. Finally, the psychologist testified that appellant has significant mental illnesses which would interfere with her ability to raise A. M. A. and to provide constant care and a safe and secure home for her. He stated that the chance that appellant's behavior will change is low.

Appellant argues that she has made some positive changes in her life, pointing to the fact that she has completed drug abuse and parenting classes. "A few months of partial stability do not establish that the parent is capable of maintaining the progress. In considering recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation." (Footnote omitted.) *In the Interest of A. M. L.*[5]

---

[4] *In the Interest of R. W.*, 248 Ga. App. 522, 524 (1) (546 SE2d 882) (2001).

[5] *In the Interest of A. M. L.*, 242 Ga. App. 121, 124 (1) (c) (527 SE2d 614) (2000).

As to the fourth finding, that continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to A. M. A.,

> [t]he same circumstances that authorized the juvenile court's determination that [A. M. A. was] deprived due to lack of proper parental control or to parental inability and that such deprivation was likely to continue further provided clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to [her].

*In the Interest of N. L.*[6] In this case, the evidence presented to the juvenile court supports a finding that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to A. M. A. We note, further, that A. M. A. has been in the custody of DFACS since she was two days old. She is doing well in foster care and has formed no bond with appellant. "This evidence supports a finding that [A. M. A.] would suffer serious harm if returned to [appellant]." (Punctuation omitted.) *In the Interest of H. D. M.*[7]

Finally, the record supports the juvenile court's finding that termination of appellant's parental rights is in the best interest of A. M. A. "The same factors that show parental misconduct or inability can support a juvenile court's finding that termination of parental rights is in the child's best interest." *In the Interest of V. M. T.*, supra at 736-737 (3). In light of appellant's drug abuse and mental illnesses, criminal activity, past history of neglect and abuse of A. M. A.'s siblings, failure to secure stable employment and housing, and failure to provide any financial support to A. M. A., it is clear that the juvenile court was authorized to conclude that A. M. A.'s best interest would be served by terminating appellant's parental rights.

2. Appellant next contends that the juvenile court erred in failing to appoint an attorney to represent A. M. A. at the termination hearing. The record does not support this contention.

Under OCGA § 15-11-98 (a), "[i]n any proceeding for terminating parental rights or any rehearing or appeal thereon, the court shall appoint an attorney to represent the child as the child's counsel and may appoint a separate guardian ad litem or a guardian ad litem *who may be the same person as the child's counsel.*" (Emphasis supplied.) In this case, an attorney represented A. M. A.'s interests as guardian ad litem in both the deprivation and termination proceedings, and

---

[6] *In the Interest of N. L.*, 260 Ga. App. 830, 835 (581 SE2d 643) (2003).
[7] *In the Interest of H. D. M.*, 241 Ga. App. 805, 807 (1) (527 SE2d 633) (2000).

the juvenile court noted in its termination order that the guardian ad litem "fully discharged his duties and responsibilities as attorney for the child."

3. Appellant also maintains that the juvenile court erred in failing to appoint an attorney to represent her at the termination hearing pursuant to OCGA § 15-11-98 (b), or, in the alternative, in failing to hold a hearing to determine whether or not counsel should have been appointed. We agree that the trial court erred in failing to make a proper determination as to whether counsel should have been appointed to represent appellant.

> While termination of parental rights cases are more civil in nature than criminal, parents facing termination of their rights have been afforded some of the protections to which criminal defendants are entitled. With regard to the right to counsel, OCGA § 15-11-98 (b) provides that if the parent or parents of the child desire to be represented but are indigent, the court shall appoint an attorney for such parent or parents. Moreover, the Supreme Court, citing former Ga. Code Ann. §§ 24A-1701 (d) and 24A-2001 (a) (currently OCGA §§ 15-11-39 (d) and 15-11-6 (b)), has held that it is thus quite evident that the entire legislative scheme written into the pertinent provisions of the Juvenile Code was intended to provide to an indigent parent effective representation at all stages of any proceeding involving the termination of that parent's right to his or her child.

(Citations and punctuation omitted.) *In the Interest of M. E.*[8]

As recited above, the juvenile court advised appellant on October 7, 2003, that the termination hearing would be held on November 13, 2003, that she could "apply for a court appointed attorney if she wished, but that the termination hearing would take place on 11/13/03." Appellant told the court that she wished to retain her own attorney. On the morning of November 13, 2003, indigent counsel appeared at the termination hearing and told the court that he was uncertain as to whether he would be representing appellant at the hearing. He informed the court that appellant had waited until two weeks before the hearing to apply for indigent counsel and that he had begun preparing for the case after appellant told him the week before that she had filed her application. He also stated that he had learned three days before the hearing that appellant did not qualify as an indigent, but then had been told by appellant on the morning of the hearing

---

[8] *In the Interest of M. E.*, 265 Ga. App. 412, 418-419 (3) (593 SE2d 924) (2004).

itself that she had lost her job in the previous week and had not filed a new application for indigent counsel. The trial court consulted counsel for DFACS, who argued to the court that appellant's failure to appear with counsel was an attempt to delay the proceedings, pointing out that appellant had been told clearly that she needed to secure legal representation but that if she did not do so, the hearing would still take place. At this point, the juvenile court told indigent counsel, "You're relieved then. She didn't qualify promptly or appropriately. She's on her own."

The limited nature of the inquiry here leaves unanswered the question of whether or not appellant was indigent at the time of the hearing. On the one hand is the statement of indigent counsel that he had learned three days before the hearing that appellant did not qualify as an indigent; on the other hand is appellant's assertion that she had lost her job in the week before the hearing. The juvenile court's statement that "[s]he didn't qualify promptly or appropriately," indicates that the court itself was unsure as to whether appellant did not qualify in a timely fashion as an indigent, or whether she could not appropriately qualify because she was not an indigent. Under such circumstances, it was incumbent on the court to make inquiry into appellant's financial status and properly determine whether she was indigent. The juvenile court, however, failed to make any inquiry into appellant's financial status, and this failure was error. *Ford v. State*.[9]

The State points out that the public defender had determined that appellant was not indigent and that no evidence was presented by appellant to contradict this determination. As we explained in *Ford v. State*, supra,

> [t]he determination of [appellant's] indigent status was made solely by the public defender, without participation by the court. The record is silent as to how this determination was made by the public defender. From the record before us, therefore, it appears that the trial court improperly delegated the nondelegable duty to inquire about the facts of indigence. While it is not error to have the public defender interview applicants for appointment of counsel, it is the trial court's responsibility to make a determination of indigence based upon evidence and to establish a record of such finding.

(Citations, punctuation and footnotes omitted.) Id.

---

[9] *Ford v. State*, 254 Ga. App. 413, 414 (563 SE2d 170) (2002).

Even assuming that appellant was nonindigent, there is no evidence in the record that appellant waived her right to counsel. "Waiver will not be 'lightly presumed,' and a trial judge must 'indulge every reasonable presumption against waiver.'" *Callaway v. State.*[10]

> For a non-indigent defendant, such as appellant, the constitutional right to counsel only entitles [her] to be defended by counsel of [her] own selection whenever [she] is able and willing to employ an attorney and uses *reasonable diligence* to obtain [her] services. Since a non-indigent defendant's right to counsel is predicated upon [her] own diligence, a failure on [her] part to retain counsel may constitute a waiver of the right to counsel. Thus, when presented with a non-indigent defendant who has appeared for trial without retained counsel, the trial judge has a duty to delay the proceedings long enough to ascertain whether the defendant has acted with reasonable diligence in obtaining an attorney's services and whether the absence of an attorney is attributable to reasons beyond the defendant's control.

(Punctuation omitted.) *Houston v. State.*[11] In this case, the juvenile court made only a limited inquiry into whether appellant acted with reasonable diligence in obtaining representation and whether the absence of an attorney was attributable to reasons beyond her control. In doing so, "the trial court failed to exercise its affirmative duty of determining on the record whether [appellant] exercised reasonable diligence in attempting to retain trial counsel." *McQueen v. State.*[12]

The fact that there appears to be more than sufficient evidence to support the termination of appellant's parental rights does not relieve the juvenile court of its obligation to determine whether trial counsel should have been appointed for appellant. The court's limited inquiry, together with its failure to ascertain appellant's financial status, compel us to vacate the judgment of the juvenile court and remand the case. On remand, the trial court must determine, on the record, whether appellant waived her right to counsel, if any. If there was no waiver, the trial court must then determine, on the record, whether appellant was indigent such that counsel should have been appointed to her. If, after making these determinations, the trial court finds that appellant had a right to counsel which she did not

---

[10] *Callaway v. State*, 197 Ga. App. 606, 607 (398 SE2d 856) (1990).
[11] *Houston v. State*, 205 Ga. App. 703, 704 (423 SE2d 431) (1992).
[12] *McQueen v. State*, 228 Ga. App. 732, 734 (492 SE2d 720) (1997).

waive, the trial court must order a new hearing on the termination petition. If, on the other hand, the trial court determines that appellant either waived her right to appointed counsel or had no such right because she was not indigent, it may reenter its original judgment.

*Judgment vacated and case remanded with direction. Barnes and Mikell, JJ., concur.*

DECIDED DECEMBER 6, 2004.

*William A. Adams, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Mallory & Trice, John R. Mallory*, for appellee.