648 S.E.2d 189 (2007)
In the Interest of R.L.J., a child.
No. A07A0140.
Court of Appeals of Georgia.
June 19, 2007.
*190 Jon C. Rhoades, Jerry F. Pittman, Douglasville, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jason S. Naunas, Assistant Attorney General, Linda B. Taylor, Newnan, for appellee.
ADAMS, Judge.
The mother of R.L.J. appeals from the juvenile court's order terminating her parental rights. The mother does not argue on appeal that the evidence was insufficient to support the termination order. Rather, she asserts that the juvenile court erred in proceeding with the termination hearing in her absence and the absence of counsel appearing on her behalf. We disagree and affirm.
The procedural history of this case is one of continuing delay and postponement, often centering around the exigencies and conflicts of the mother's attorneys, two of whom were court-appointed and two of whom were privately retained. The Meriwether County Department of Family and Children Services first became involved in R.L.J.'s case on June 26, 2002, the day after he was born. The Department was granted temporary legal custody pursuant to an emergency order stating that the mother had a history of mental health problems, lacked parenting skills and was currently under mental health treatment at Central State Hospital. The order also noted that the mother had a prior history with the Department and that her parental rights in her other children previously had been terminated.
On July 8, 2002, the juvenile court appointed indigent legal counsel for the mother. The court continued a deprivation hearing scheduled for July 10, due to this recent appointment of counsel. The deprivation hearing was re-scheduled for September 2, 2002, but was postponed because a witness was unavailable. The court approved a nonreunification case plan in this matter on October 10. At some point, the mother retained private counsel, and the next month, the court issued orders continuing the deprivation hearing on two occasions because that *191 attorney was on maternity leave. The attorney moved to withdraw from the case on December 10 due to the birth of her child, and the trial court granted the motion. The trial court again continued the deprivation hearing, citing the attorney's maternity leave, and appointed the mother a second indigent counsel.
In January 2003, the deprivation hearing was continued to February 12, 2003, and the deprivation hearing was held on that date, with the mother's appointed counsel representing her. The trial court found R.L.J. to be a deprived child, after the mother stipulated to that finding in the hearing. Another hearing was scheduled for March 19, 2003, to allow the mother to show cause why the Department's motion for nonreunification should not be granted, but the juvenile court continued that hearing until April 9, 2003, to allow the mother's attorney to obtain her psychological records. The trial court subsequently granted the Department's motion for nonreunification. Following two judicial reviews, the juvenile court adopted another nonreunification case plan on July 2, 2004 and scheduled a hearing on a second deprivation petition filed by the Department for July 14. That hearing was continued because the mother's attorney had a conflict. On August 11, 2004, the juvenile court once again found R.L.J. deprived and again granted the Department temporary legal custody.
On September 4, the Department filed a petition to terminate the mother's parental rights, and a termination hearing was scheduled for December 1. The mother then obtained private counsel, who entered an appearance on October 21, 2004. A month later he filed a conflict letter for the upcoming termination hearing. The termination hearing was later continued to allow for the completion of a Department-requested psychological evaluation on the mother. On or about April 28, 2005, the mother's counsel was granted an indefinite emergency leave of absence for medical reasons.
At some point, however, a hearing on the pending termination petition was scheduled for December 14, 2005. On December 8, 2005, the mother's private attorney moved to withdraw from the case, and that order was granted on January 9, 2006. In the interim, the juvenile court proceeded with the scheduled termination hearing on December 14. Neither the mother nor her private attorney appeared at the hearing. Although there was some indication that the attorney had called the day before the hearing to request that it be removed from the calendar, he did not file a conflict letter or a written motion for continuance.
Although the motion to withdraw was filed on December 8 and the certificate of service was dated December 6, the trial judge had not seen it prior to the hearing. The clerk of court stated that she had received the motion from the mother herself, who had brought it in for filing.
A representative from the Meriwether County Public Defender's office did appear at the hearing and informed the court that the public defender had been asked by the child's grandmother to represent the mother at the hearing. But because no written application for representation had been submitted, the public defender could not state whether the mother even qualified at that time for indigent representation. The public defender requested that the hearing be continued until a determination could be made as to whether his office could represent the mother.
The grandmother was also present at the hearing and testified that approximately one week earlier, her daughter had terminated the services of the private attorney and admitted herself voluntarily into a mental health facility. She said that her daughter had had trouble meeting with that attorney because he had cancer. The grandmother indicated that she went to the public defender's office at her daughter's request to seek representation. The grandmother said that she had paid for her daughter's private attorneys because her daughter did not work and was on disability.
In reaching the decision to deny the motion for continuance, the trial judge acknowledged the confusing nature of the situation. The attorney of record was not in court, and in fact, had been fired from the case, yet no order of withdrawal had been entered. And *192 although a representative from the public defender's office was present, the mother had not applied for indigent counsel. But the court emphasized that the repeated delays in the case had left the child to languish in foster care, where he had been for three and one-half years since his birth. The trial judge was aware of the mother's attorney's illness, but had spoken to him recently when they were both representing clients in court. The judge said the attorney looked good and indicated that he felt good. And he noted that the mother had the opportunity to apply for representation by the public defender's office after she fired her attorney, but instead voluntarily checked herself into a treatment facility. Taking these factors into consideration, along with the child's need for stability, the trial judge declined to continue the case.[1] The public defender declined to participate in the hearing because the mother had never applied for representation and the withdrawal of her former attorney was not complete.
The mother asserts that the trial court erred in failing to grant a continuance, because no order permitting her private attorney to withdraw had been signed as of the date of the hearing. Thus, she argues that she had counsel, but he failed to appear at the hearing or to file a conflict letter, leaving her unrepresented. The mother does not assert that she was wrongfully denied counsel, but rather asserts that the trial court should have continued the case because her counsel, whom she had fired, was not present. And although the mother enumerates that it was error for the hearing to occur in her own absence, she presents no argument specifically addressing that point.
"A trial court's decision to grant or to deny a continuance will not be disturbed absent abuse of discretion," and "the party seeking a continuance must show due diligence." (Citations and footnote omitted.) In the Interest of T.R., 270 Ga.App. 401, 401-402(1), 606 S.E.2d 630 (2004). Further, to warrant a reversal on appeal, "the appellant must also show that harm resulted from the denial of the continuance." (Citation and punctuation omitted.) In the Interest of S.S.G.A., 285 Ga.App. 275, 281(3), 645 S.E.2d 724 (2007).[2]
At the time of the hearing, the petition for termination had been pending for 15 months. The mother fired her attorney, her fourth in the case, approximately one week before the termination hearing, and personally filed the motion for her attorney's withdrawal from the case. She apparently was aware that she needed new counsel because she asked the grandmother to inquire at the public defender's office. Yet she made no real effort to hire another attorney to represent her, as she never filed an application for indigent representation. Instead, she voluntarily checked herself into a facility, which left her unavailable for the hearing.[3] Under the circumstances, the trial court was entitled to find that the mother had failed to exercise reasonable diligence in securing representation at the hearing, and we find no abuse of discretion. See In the Interest of K.A.P., 277 Ga.App. 794, 798(2), 627 S.E.2d 857 (2006); In the Interest of J.R.T., 250 Ga.App. 720(1), 552 S.E.2d 892 (2001); In re K.H., 179 Ga.App. 4, 8(1), 345 S.E.2d 108 (1986).
Moreover, the mother makes no effort to establish that the failure to grant a continuance resulted in harm. The evidence *193 at the hearing showed that the mother was difficult to handle when she was off her medications, and that the grandmother felt that the mother could not handle the child alone. R.L.J. was born in a mental hospital. And although the mother was cooperative "for the most part," she would not sign releases enabling the Department to get her mental health records. She also refused to sign the Department's case plans, and on one occasion ordered a caseworker out of her home. The mother generally arrived late to her visits with the child and left early, leaving after 15 to 30 minutes to take a walk or a cigarette break and often not returning. During those visits, the grandmother was the primary person who interacted with the child; the mother had very little interaction. Although the child was calm in the grandmother's presence,[4] he would quickly become upset and agitated when left alone with the mother. He appeared "visibly frightened of her," sometimes crying inconsolably. The mother's rights to her other children had been terminated and they were not placed with any family members. In August 2004, the mother agreed to stop the visits with R.L.J., and had not seen the child for 15 months prior to the hearing. After that, she sometimes called the Department, but never asked about the child, who appeared to be doing well in his current foster placement. A psychologist testified that the mother had been diagnosed with bipolar disorder. Her mental health conditions limited her ability to parent a child, and the psychologist felt that it was unlikely that her condition would ever improve. He believed that the child would be at risk if left with the mother. The guardian ad litem assigned to R.L.J.'s case recommended that the parental rights be terminated due to the mother's chronic mental illness.
The mother does not argue that this evidence was insufficient to support the termination of her parental rights. "Beyond [her] bare claim that [she was entitled to a continuance], [s]he failed to show what arguments [s]he would have advanced, what evidence [s]he would have produced in h[er] favor, or how [s]he would have been successful had [her counsel been present]." In the Interest of M.S., 279 Ga.App. 254, 261-262(1), 630 S.E.2d 856 (2006).
Accordingly, we find no ground for reversing the trial court's denial of the motion for continuance. See In the Interest of Z.K., 285 Ga.App. 150, 645 S.E.2d 637 (2007) (physical precedent only).
Judgment affirmed.
ANDREWS, P.J., and ELLINGTON, J., concur.
NOTES
[1] The judge even asked the grandmother if she thought it was fair to the child to continue the case and let the child remain in foster care. The grandmother said that she did not think it was fair, and felt that the mother could not handle the child alone. But she hoped that she or another relative could take the child and care for it with help from the Department. The grandmother acknowledged, however, that she had never filed a motion to intervene in the case.
[2] Similarly, "[b]ecause [termination] is a civil matter not involving a state or federal constitutional right to counsel, the [mother] is required to show harm as well as error to warrant reversal" based upon a denial of the right to counsel. (Footnotes omitted.) In the Interest of C.B., 258 Ga.App. 143, 148(3), 574 S.E.2d 339 (2002).
[3] "A party may waive the right to be present during trial proceedings by voluntarily absenting herself from the court." (Footnote omitted.) In the Interest of A.G.I., 246 Ga.App. 85, 86(1), 539 S.E.2d 584 (2000).
[4] The Department explored placing the child with the grandmother, but the grandmother did not feel that she could be a permanent placement, although she wanted to be a part of the child's life.