A08A2029. IN THE INTEREST OF J. M. B., a child.

(676 SE2d 9)

BERNES, Judge.

The mother of J. M. B. appeals from the juvenile court's order terminating her parental rights. Because appellant was completely and erroneously denied her right to legal counsel during the termination hearing, we vacate the order and judgment and remand this case to the juvenile court for a rehearing.

The record shows that J. M. B., then two years old, was removed from appellant's home in February 2005 based on drug-related allegations. Appellant was subsequently convicted on drug-related charges and given a sentence of ten years, to serve seven in incarceration.

In April 2005, the Department of Family and Children Services ("DFCS") filed a petition alleging J. M. B. to be deprived, and the juvenile court held a 72-hour detention hearing on the petition. Appellant was appointed counsel and represented at the hearing. Throughout 2005 and 2006, the juvenile court held several hearings on appellant's case, all of which she attended and some of which she was represented by counsel. For reasons unclear in the record, appellant was not represented during other hearings, although she did waive her right to counsel on at least one occasion.

In February 2007, the juvenile court continued a scheduled adjudicatory hearing on a renewed deprivation petition after appellant requested her appointed counsel. Thereafter, the hearing was

rescheduled until the following month, at which time appellant was represented by the same counsel that had previously been appointed to her.

The state filed a petition to terminate appellant's parental rights in August 2007. The juvenile court forwarded a copy of the termination petition to appellant with a letter advising her that it was "urgent" for her to contact the court "as soon as possible" if she desired to have an attorney at the hearing. Appellant was also served with a summons and process that instructed her to inform the court if she desired a lawyer.

The juvenile court held a hearing on the termination petition in November 2007. At the commencement of the hearing, the court advised appellant that she had the right to counsel and, in the event that she could not afford counsel, one would be appointed to her. The following colloquy then transpired:

THE COURT: Do you want a lawyer to represent you?

[APPELLANT]: Yes.

THE COURT: Okay. Now, you were served with a notice that if you wanted a lawyer you had to contact the Court. You were actually served twice.

[APPELLANT]: I'm saying, how can I have a — and I was in prison.

THE COURT: Well, you had no telephone privileges to call a court?

[APPELLANT]: No. They don't give us telephone privileges like that.

THE COURT: Even to call a Court, if you have a court proceeding?

[APPELLANT]: No. We — no. Them counselors, they ain't very good.

THE COURT: I'm not talking about being very good, I'm just —

[APPELLANT]: I'm saying the counselor, if I ask, like, them to handle some business, like to call calls like that, they won't do it.

THE COURT: So you did ask?

[APPELLANT]: No, I didn't. But one time before, I asked her to call on a lawyer thing, she wouldn't — she wouldn't do it. My counselor wouldn't. She said that she don't do things like that.

THE COURT: Well, did you write a letter to the Court?

[APPELLANT]: No, sir.

THE COURT: Did you make any effort at all to contact the Court to ask for a lawyer?

[APPELLANT]: No, sir.

THE COURT: I'm not going to provide you a lawyer. If you have a right to one, the counselor would probably provide one to you, but you got to make some effort on your own. You were served twice with a notice of this hearing, and it included the notice to right to counsel and how to go[ ] about it. You were also sent a separate letter . . . advising you again that said urgent for you to contact the Court, gave you a phone number and an address urging you contact me . . . , and it was signed by the court administrator. And you made no effort to do that, so I'm not going to provide a lawyer to you.

Now, you still have certain rights in this proceeding. You have the right to call witnesses if you have any witnesses. You have the right to cross-examine witnesses that [the state] may call. If I were to neglect to give you that opportunity, and if you have questions of any witness, please raise your hand. I'll be glad to give you the opportunity to do that.

And do you oppose this termination of parental rights, then?

. . .

[APPELLANT]: I'm against it.

The state then presented its case. Appellant did not raise a single objection or cross-examine a single witness throughout the state's case-in-chief. After the state rested, appellant was given an opportunity to testify. She made a statement consisting solely of an assertion that the state misrepresented the nature of her conviction[1] and a plea that she be permitted to see her child.[2] When asked by the court if she had any other witnesses, appellant responded: "I don't have no — I didn't even know I — I got them papers, but this is not a thing that I can understand about that, and I didn't have nobody to tell me what it was. I didn't know I could have witnesses and all that." The juvenile court then granted the state's petition terminating her parental rights.

---

[1] The state continuously asserted that appellant was convicted of "giving drugs to a minor," but appellant maintained that she was charged and convicted only with possession of cocaine. The record does not contain any documentation of appellant's indictment or conviction.

[2] Although the juvenile court verbally questioned why appellant had not been provided visitation with J. M. B. while she was incarcerated, no explanation was given.

As stated by our Supreme Court, "[t]here can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring." *Nix v. Dept. of Human Resources*, 236 Ga. 794, 795 (225 SE2d 306) (1976). "[W]resting a child away from the care and custody of its parents is of serious consequence [and] is so drastic that it should be attended only by the most stringent procedural safeguards." *Sanchez v. Walker County Dept. of Family &c. Svcs.*, 237 Ga. 406, 411 (229 SE2d 66) (1976). See *Nix*, 236 Ga. at 795 ("It is a tearing of the flesh and it can be done by the court only under the most carefully controlled and regulated circumstances for the sake of the child.").

In order to defend this stringently protected right, Georgia law provides that the court shall appoint an attorney for any indigent[3] parent who desires counsel in any proceeding involving the termination of his or her parental rights. OCGA § 15-11-98 (b); *Nix*, 236 Ga. at 796 ("It is . . . quite evident that the entire legislative scheme written into the pertinent provisions of the Juvenile Code was intended to provide to an indigent parent effective representation at all stages of any proceeding involving the termination of that parent's right to his or her child."). See also OCGA § 15-11-6 (b). And "to waive a right as fundamental as effective counsel, the trial court must, on the record, determine that the waiver is knowing, intelligent and voluntary." (Citation omitted.) *In the Interest of Z. K.*, 285 Ga. App. 150 (645 SE2d 637) (2007) (physical precedent only). See *In the Interest of B. B.*, 268 Ga. App. 603, 603-604 (1) (602 SE2d 330) (2004).

Here, it is clear that appellant did not waive her right to counsel on the record in a knowing, intelligent, and voluntary manner. Rather, the juvenile court concluded that she constructively waived the right to representation by her conduct in failing to inform the court that she desired appointed counsel in advance of the hearing. But "OCGA § 15-11-6 (b) . . . does not condition the right to counsel on pre-trial contact with the court." *In the Interest of P. D. W.*, 296 Ga. App. 189, 198 (2) (674 SE2d 338) (2009). Moreover, in a hearing involving the termination of parental rights, "[w]aiver [of the right to counsel] will not be lightly presumed, and a trial judge must indulge every reasonable presumption against waiver." (Citation, punctuation and footnote omitted.) *In the Interest of A. M. A.*, 270 Ga. App. 769, 776 (3) (607 SE2d 916) (2004). See also *In the Interest of Z. K.*, 285 Ga. App. at 153.

---

[3] The parties do not dispute that appellant was indigent throughout the proceedings before the juvenile court.

Appellant had been appointed counsel and was represented for at least half of the proceedings before the juvenile court, including one hearing that had been continued for the sole purpose of providing her with representation. There is no evidence that appellant's counsel was permitted to withdraw, and the record is unclear as to why she was unrepresented at the termination hearing after previously having been appointed counsel. The record is also devoid of any evidence that appellant's failure to provide the court with advance notice of her desire for counsel had previously been a point of contention with the court or that she had been warned that the absence of advance notification would be regarded as evidence that she knowingly and voluntarily waived her right to counsel.

Moreover, appellant received an IQ composite score of 63 on the Kaufman Brief Intelligence Test, placing her within "the lower extreme range of overall intellectual functioning." She clearly lacked understanding of the process and was unprepared to proceed without an attorney, as illustrated not only by her responses to the court's questioning, but also by her failure to invoke a single objection or question a single witness. Under these circumstances, the trial court erred in denying appellant's request for counsel. See *In the Interest of P. D. W.*, 296 Ga. App. at 198 (2); *In the Interest of Z. K.*, 285 Ga. App. at 150-153; *In the Interest of C. B.*, 258 Ga. App. 143, 147 (3) (574 SE2d 339) (2002). Cf. *In the Interest of B. C. P.*, 229 Ga. App. 111, 115-117 (3) (493 SE2d 258) (1997).

In addition to proving error, this Court has previously held that an indigent parent who has requested and been erroneously denied counsel during a termination hearing must also prove harm. See generally *In the Interest of K. E. A.*, 292 Ga. App. 239, 243 (3) (663 SE2d 822) (2008); *In the Interest of J. A. S.*, 287 Ga. App. 125, 130-131 (650 SE2d 788) (2007); *In the Interest of Z. K.*, 285 Ga. App. at 153-154. We conclude that placing this additional burden upon an indigent parent who has already established that his or her right to counsel was erroneously denied, however, does not comport with the Supreme Court's directive that we guarantee "the most stringent procedural safeguards" in termination cases. *Sanchez*, 237 Ga. at 411. See *Nix*, 236 Ga. at 795. Cf. *Clark v. Wade*, 273 Ga. 587, 596-597 (IV) (544 SE2d 99) (2001); *Watkins v. Watkins*, 266 Ga. 269, 270 (1) (466 SE2d 860) (1996); *Brooks v. Parkerson*, 265 Ga. 189, 191-192 (2) (a) (454 SE2d 769) (1995); *In re Suggs*, 249 Ga. 365, 367-368 (2) (291 SE2d 233) (1982). In so holding, we recognize the delicate balance between a parent's right to raise his or her child without undue state interference and the state's compelling interest to protect a child when that child's health or welfare is threatened. See *Brooks*, 265 Ga. at 191-193 (2) (a), (b). But we nonetheless conclude that, when the state is terminating a parent's "fundamental and fiercely

guarded right" to his or her child, although technically done in a civil proceeding, the total and erroneous denial of appointed counsel during the termination hearing is presumptively harmful because it calls into question the very structural integrity of the fact-finding process. *Nix*, 236 Ga. at 795. Cf. *State v. Wooten*, 273 Ga. 529, 532 (2), n.14 (543 SE2d 721) (2001) (noting that a total deprivation of the right to trial counsel in criminal cases is a structural defect that affects the framework within which the trial proceeds and therefore is not subject to the harmless error analysis); *Fortson v. State*, 272 Ga. 457, 460-461 (2) (532 SE2d 102) (2000) (holding that the application of the harmless error doctrine would be inappropriate when a criminal defendant was erroneously denied counsel during a plea-withdrawal hearing during which he argued that his guilty plea was not knowingly and voluntarily entered).

We therefore overrule *In the Interest of K. E. A.*, 292 Ga. App. 239 and *In the Interest of J. A. S.*, 287 Ga. App. 125 to the extent that they require a showing of harmful error after an indigent parent's request for appointed counsel during a termination hearing had been erroneously denied. We further disapprove of the following cases to the extent that they can be read to support the contention that a total and erroneous deprivation of counsel to an indigent parent during a termination hearing is subject to a harmless error analysis: *In the Interest of R. L. J.*, 285 Ga. App. 887, 890-891 (648 SE2d 189) (2007); *In the Interest of Z. K.*, 285 Ga. App. at 153-154 (physical precedent only); *In the Interest of M. S.*, 279 Ga. App. 254, 261-262 (1) (630 SE2d 856) (2006); and *In the Interest of C. B.*, 258 Ga. App. at 148.[4]

In conclusion, it is clear that the appellant in this case requested appointed counsel during her termination hearing, and the record does not justify a finding that she knowingly, intelligently and voluntarily waived her right to representation. Quite simply, appellant's rights were not sufficiently guarded in this case as a result of the denial of counsel. The termination order is therefore vacated and this case is remanded to the juvenile court for a rehearing in accordance with this opinion.

*Judgment vacated and case remanded. Miller, C. J., Andrews, P. J., Johnson, P. J., Blackburn, P. J., Smith, P. J., Barnes, Ellington, Phipps, Mikell, Adams and Doyle, JJ., concur.*

DECIDED MARCH 20, 2009.

---

[4] *In the Interest of P. D. W.*, 296 Ga. App. 189 does not specifically address or resolve whether harm must be shown when a parent is erroneously denied counsel in a termination case, since the record in that case was replete with evidence of harm.

*Kirby & Roberts, James G. Baker*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Evan L. Stapler*, for appellee.