**Electronically Filed
Supreme Court
SCWC-18-0000773
11-MAR-2021
08:00 AM
Dkt. 37 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

IN RE L.I. AND H.D.K

_____

SCWC-18-0000773

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000773; FC-S NOS. 14-1-0092 and 15-1-0072)

MARCH 11, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ., AND
CIRCUIT JUDGE CATALDO, IN PLACE OF POLLACK, J., RECUSED

OPINION OF THE COURT BY WILSON, J.

## I.  INTRODUCTION

This case arises from the termination of Petitioner/
Appellant mother's ("Mother") parental rights as to her children
L.I. and H.D.K.  Mother asserts that the Family Court of the
Second Circuit[1] ("family court") erred in failing to appoint
counsel prior to the grant of foster custody.

_____

[1]      The Honorable Keith E. Tanaka presided.

The instant appeal also makes apparent an inconsistency in this court's opinion in In re T.M., 131 Hawaiʻi 419, 319 P.3d 338 (2014), regarding when counsel must be appointed for a parent in a child custody proceeding.

The failure to appoint Mother counsel at the time the Department of Human Services ("DHS") filed a petition for foster custody violates In re T.M., and was thus, structural error. As discussed below, however, because foster custody or termination of parental rights is possible upon the filing of a petition for family supervision, we now further hold that Mother should have been appointed counsel at the time DHS filed its petition for family supervision. Accordingly, we vacate the Intermediate Court of Appeals' ("ICA") Judgment on Appeal affirming the family court's order granting DHS foster custody and subsequent order terminating Mother's parental rights and remand.

## II. BACKGROUND[2]

Mother has two children, L.I., who was born on December 22, 2012, and H.D.K, who was born on June 18, 2015. DHS's involvement with L.I. and H.D.K. began after a report of Mother's substance use. Mother admitted to her substance abuse problem during an interview with DHS. On June 13, 2014, DHS

---

[2] The procedural history of this case will not be fully discussed as the only issue before this court is whether the family court erred when it failed to appoint Mother counsel prior to the grant of foster custody.

filed its Petition for Family Supervision of Mother's then-only child, L.I., and on June 24, 2014, Mother consented to family supervision of L.I.

On July 22, 2014, Mother agreed to her first service plan, which required her to participate in a substance abuse assessment and recommended treatment, to receive individual counseling, to be responsible for L.I.'s needs, and to cooperate with DHS.

On January 13, 2015, the family court conducted a periodic review hearing, where DHS's Safe Family Home Report ("SFHR") filed on January 9, 2015 was admitted by the court, which documented Mother's inability to "manage her life" and care for L.I. The family court revoked family supervision and placed L.I. in foster care with DHS effective January 13, 2015. Additionally, the family court ordered its second service plan, and Mother agreed to participate in a psychological evaluation, a substance abuse assessment and recommended treatment, random urine analysis if recommended by the assessment, and monthly contact with the social worker by telephone, email, or in person. On April 14, 2015, Mother was appointed counsel.

On June 18, 2015, H.D.K. was born drug-exposed, testing positive for methamphetamines at birth. DHS filed a petition for temporary foster custody of H.D.K. On August 31, 2015, Mother stipulated to the court's jurisdiction due to a

threat of harm from "inadequate housing" and agreed to court-ordered services. The court awarded DHS foster custody over H.D.K. and ordered the service plan dated August 31, 2015, which involved both children.

Mother failed to comply with her August 31, 2015 service plan, and a SFHR filed on December 24, 2015 documented that there were unresolved safety issues including substance abuse, lack of stable housing, and emotional and mental health issues.

At the hearing on December 29, 2015, DHS asked that an Order to Show Cause ("OSC") hearing be set pursuant to HRS § 587A-29 (2019), requiring Mother to present evidence as to why the case should not be set for a termination of parental rights or legal guardianship hearing. The court found "in favor of the department that this case should go into permanency" because "mother has not met the burden[.]"

On August 11, 2017, DHS filed its Motion to Establish a Permanent Plan ("MEPP"). Mother contested the MEPP, and a trial was scheduled for October 20, 2017. The MEPP's stated goal was to terminate Mother's parental rights, have DHS be nominated as permanent custodian, and have the children adopted under HRS § 587A-33 (2016). The hearing on the MEPP took place on October 20, 2017 and January 5, 2018. On January 31, 2018, the family court issued its Order Re: Permanent Plans. The

4

court found that Mother "has consistently failed to comply with service plans" and that the "adoption of both children, each to different adoptive parents and homes"[3] is "in the best interests of each minor." The court ordered the Permanent Plan for both children and ordered the placement for each child with the adoptive parents, directing DHS to file its motion to terminate parental rights within 60 days. DHS filed a Motion to Terminate Parental Rights ("MTPR") on July 6, 2018.

On September 21, 2018, the family court issued its Order Terminating Parental Rights, finding by clear and convincing evidence that Mother was not presently willing and able to provide the children with a safe family home, even with the assistance of a service plan. The family court also found the proposed Permanent Plan to be in the best interests of the children. The court granted DHS's MTPR, terminated Mother's parental rights, awarded permanent custody of the children to DHS, and approved the Permanent Plan dated July 6, 2018.

On October 8, 2018, Mother appealed to the ICA. Relevant to this appeal, Mother argued that the family court abused its discretion when it only appointed her counsel ninety-seven days after her older child was placed in foster custody.

---

[3]     The court noted that although "in separate homes, the children spend a considerable amount of time visiting with each other while in the current placement."

5

Mother stated that this court held in In re T.M. that a family court must appoint counsel for indigent parents when a petition for temporary foster custody is granted.

The ICA filed a Summary Disposition Order ("SDO") on April 6, 2020, affirming the family court's September 21, 2018 Order Terminating Parental Rights.  The ICA held that although the family court erred by failing to appoint counsel for Mother until ninety-seven days after L.I. was placed in foster custody, the error was harmless because Mother suffered no prejudice or harm as a result.  Quoting In re T.M., the ICA noted that "the Hawai'i Supreme Court clearly held that 'trial courts must appoint counsel for indigent parents upon the granting of a petition to DHS for temporary foster custody of their children.'"  131 Hawai'i at 436, 319 P.3d at 355.  However, the ICA explained that "under the circumstances of this case, we are reluctant to vacate the Termination Order on this ground."  The ICA observed that although the "delay of three months was impermissible," Mother's "early departure from the courtroom on January 13, 2015, her failure to provide DHS a specific street address for her new residence, and her inconsistent responses to voicemail messages and instructions for completing the paperwork

necessary to establish her indigency all contributed greatly to the delay."[4]

Mother filed an application for writ of certiorari to review the ICA's decision on June 12, 2020. In Mother's application, she presents two questions related to the family court's delay in appointing her counsel:

> (1) Does this Court's ruling in In re T.M., 319 P.3d 338, 340 (Haw. 2014), require a trial court in a child welfare case to appoint counsel for a parent upon the State's filing of a petition seeking custody, and prior to the deprivation of custody?

> (2) Where the trial court fails to appoint counsel, is that failure harmful per se such that reversal is required without the parent having to demonstrate prejudice?

In addition, Mother argues that there is ambiguity "as to whether courts must appoint counsel upon filing of the petition or whether due process permits such appointment to be delayed until after a court grants foster custody of the children to the State." Mother observes that In re T.M. created ambiguity because it gives conflicting guidance as to when counsel must be appointed:

> It stated that "from and after the filing date of this opinion, courts must appoint counsel for indigent parents once DHS files a petition to assert foster custody over a child." . . . . However, the Court also stated later in the opinion that "upon the filing date of this opinion,

---

[4] At the January 13, 2015 periodic review hearing, the family court noted that there were continuing concerns regarding Mother's ability to care for L.I., and DHS sought foster custody. After the family court granted foster custody over L.I. to DHS, Mother left the room prior to the hearing's conclusion.

trial courts must appoint counsel for indigent parents <u>upon the granting of a petition</u> to DHS for temporary foster custody of their children."

### III. STANDARD OF REVIEW

#### A. Constitutional Law

"We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." <u>State v. Ui</u>, 142 Hawai'i 287, 292, 418 P.3d 628, 633 (2018).

### IV. DISCUSSION

#### A. <u>In re T.M.</u> requires counsel to be appointed at the time DHS files a petition for family supervision or a petition asserting custody over the child.

In <u>In re T.M.</u>, the petitioner appealed from an order granting temporary foster custody of her children to DHS because she was not appointed counsel until nineteen months after DHS filed its petition for temporary foster custody. 131 Hawai'i at 421, 319 P.3d at 340. This court held that the family court's failure to appoint counsel constituted an abuse of discretion. <u>Id.</u> The <u>In re T.M.</u> court explained that, had the petitioner been appointed counsel sooner, she may have been able to comply with the terms of the family plan and provide her child with a safe family home, thus potentially avoiding the subsequent termination of her parental rights. <u>Id.</u> at 433, 319 P.3d at 352. The <u>In re T.M.</u> court concluded by holding that "parents

8

have a constitutional right to counsel under article I, section 5 in parental termination proceedings and that from and after the filing date of this opinion, courts must appoint counsel for indigent parents once DHS files a petition to assert foster custody over a child."  Id. at 421, 319 P.3d at 340.

The In re T.M. court repeatedly explained that counsel must be appointed once DHS files a petition to assert foster custody.  See id. at 435, 319 P.3d at 354 ("Thus, as soon as DHS files a petition asserting custody over a child, parents' rights are 'substantially affected.'  At that point, an attorney is essential to protect an indigent parent's liberty interest in the care, custody and control of his or her children."); id. ("Mandating the appointment of counsel for indigent parents once DHS moves for custody would remove the vagaries of a case-by-case approach.").[5]  However, near the end of the opinion, the In re T.M. court states:  "We direct that upon the filing date of this opinion, trial courts must appoint counsel for indigent parents upon the granting of a petition to DHS for temporary

---

[5]  Furthermore, footnote 23 of the In re T.M. opinion explained that indigent criminal defendants "have a right to an attorney whenever they are threatened by imprisonment, even if imprisonment is not subsequently imposed."  Id. at 435 n.23, 319 P.3d at 354 n.23.  The court noted that "the appointment of counsel is mandated because attempting to determine in advance of the proceedings whether legal representation would ultimately be required is an exercise in futility.  The safeguard for parental rights thus rests on the appointment of counsel at the beginning of proceedings . . . when T.M. was taken into custody by DHS."  Id.

foster custody of their children."  Id. at 436, 319 P.3d at 355 (emphasis added).

We now take this opportunity to clarify that In re T.M. mandated that family courts appoint counsel for indigent parents when DHS files a petition asserting custody over a child.  We now further hold that family courts must appoint counsel for indigent parents when DHS files a petition for family supervision[6] because, at that point, parental rights are substantially affected as foster custody can be ordered by the court at a subsequent hearing.[7]  See id. at 435, 319 P.3d at 354.

## B. The failure of the family court to appoint Mother counsel when DHS filed a petition for family supervision was structural error.

The family court's delay in appointing counsel violated the mandate in In re T.M. that family courts must

---

[6]     Though DHS argues that failure to appoint Mother counsel in this case is permissible because of Mother's early departure from the January 13, 2015 hearing, DHS takes the position that, as a general proposition, counsel should be appointed at the time DHS files a petition for family supervision.

[7]     A petition for family supervision hearing as well as review and return hearings implicate parental rights even if they do not directly address custody.  See HRS §§ 587A-12(b) ("If the court determines that the child is subject to imminent harm while in the custody of the child's family, the court shall order that a police officer immediately take the child into protective custody and that the department immediately assume temporary foster custody of the child."); 587A-28(d) ("At the return hearing, the court shall decide . . . [w]hether the child should be placed in foster custody or under family supervision[.]"); 587A-28(g) ("Nothing in this section shall prevent the court from setting a termination of parental rights hearing at any time the court deems appropriate."); 587A-30(b)(1) ("At each periodic review hearing, the court shall . . . enter orders . . . [t]hat the child be placed in foster custody if the court finds that the child's remaining in the family home is contrary to the welfare of the child and the child's parents are not willing and able to provide a safe family home for the child, even with the assistance of a service plan[.]").

appoint counsel for indigent parents when DHS files a petition asserting custody over a child. The family court's failure to appoint counsel was structural error.

According to Mother, In re T.M. and the principles of due process require a family court to appoint counsel for a parent upon DHS's filing of a petition for custody. She notes that she was not appointed counsel until three months after the family court awarded foster care to DHS, and this delay was impermissible.

Mother is correct. In re T.M. "recognize[d] that parents have a substantive liberty interest in the care, custody, and control of their children that is protected by the due process clause of article I, section 5 of the Hawai'i Constitution." In re T.M., 131 Hawai'i at 421, 319 P.3d at 340. Parents' "substantive liberty interest in the care, custody, and control of their children" entitles indigent parents to appointed counsel when a petition for family supervision or a petition for foster custody is filed. This court recognized that "as soon as DHS files a petition asserting custody over a child, parents' rights are 'substantially affected.' At that point, an attorney is essential to protect an indigent parent's liberty interest in the care, custody and control of his or her children." Id. at 435, 319 P.3d at 354.

11

Here, the family court's three-month delay in appointing counsel for Mother, after DHS was awarded foster care, is a clear violation of In re T.M. Pursuant to the holding in In re T.M., the failure to appoint counsel is a structural error that requires vacatur of orders made after DHS's filing for foster custody. As Mother points out, had the family court appropriately appointed her counsel prior to the January hearing, where she lost custody to DHS without the benefit of counsel, she may have been able to prevent that deprivation of her constitutional right.

The failure to timely appoint counsel is structural error which, under State v. Loher, requires vacatur without the necessity of proving harmful error.[8] 140 Hawaiʻi 205, 222, 398

_____

[8] Our decision, that failure to appoint counsel for indigent parents when DHS files a petition for family supervision or a petition asserting custody over a child is structural error, is in accord with the holdings of many of our sister courts. See e.g., In Interest of R.D., 277 P.3d 889, 896 (Colo. App. 2012) ("A majority of other jurisdictions addressing the issue have concluded that the violation of a respondent parent's statutory or constitutional right to counsel in a termination of parental rights hearing is either reversible error per se or structural error."); In Interest of J.B., 624 So. 2d 792, 792 (Fla. Dist. Ct. App. 1993) (failure to advise parent of right to counsel at the original dependency adjudication proceeding, even when parent was represented by counsel at later proceedings, "cannot be deemed harmless error since the dependency adjudication was used as a basis of the adjudication of the permanent termination of appellant's parental right"); In Interest of J.M.B., 676 S.E.2d 9, 12 (Ga. Ct. App. 2009) ("[T]he total and erroneous denial of appointed counsel during the termination hearing is presumptively harmful because it calls into question the very structural integrity of the fact-finding process."); In re A.S.A., 852 P.2d 127, 129–30 (Mont. 1993) (failure to appoint parent counsel until the end of the termination hearing violates parent's constitutional right to due process and termination judgment was reversible error); In re S.S., 90 P.3d 571, 575–76 (Okla. Civ. App. 2004) (holding that when parent is deprived of right to counsel in termination of

(continued . . .)

12

P.3d 794, 811 (2017). The family court's failure to appoint Mother counsel when DHS filed its petition for family supervision was structural error and cannot be deemed harmless. Thus, the ICA erred when it failed to vacate the family court's order granting DHS foster custody and order terminating Mother's parental rights.

## V.  CONCLUSION

For the foregoing reasons, we vacate the ICA's April 13, 2020 Judgment on Appeal affirming the family court's order granting DHS foster custody and subsequent order terminating Mother's parental rights, and remand for further proceedings consistent with this opinion and considering the best interests of the children.

| | |
|---|---|
| Michael A. Glenn<br>for Petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Adriel C.S. Menor<br>for Respondent | /s/ Sabrina S. McKenna |
| Thomas A. Helper<br>for Amici Curiae | /s/ Michael D. Wilson |
| | /s/ Lisa W. Cataldo |



---

(continued . . .)

parental rights proceeding, harmless error does not apply); In re Torrance P., 724 N.W.2d 623, 635 (Wis. 2006) (holding it was "structural error" to prohibit mother's counsel from participating in termination hearing).