**[J-119A-2016 and J-119B-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.B.M., A MINOR | : | No. 84 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| APPEAL OF: J.P., MOTHER | : | Court at 1834 MDA 2015 dated May 31, |
| | : | 2016 Affirming the Order of the Court of |
| | : | Common Pleas of Franklin County, |
| | : | Orphans' Court Division, at 42-ADOPT- |
| | : | 2014 dated September 25, 2015. |
| | : | |
| | : | ARGUED: December 6, 2016 |
| | | |
| IN RE: ADOPTION OF: A.D.M., A MINOR | : | No. 85 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| APPEAL OF: J.P., MOTHER | : | Court at 1835 MDA 2015 dated May 31, |
| | : | 2016 Affirming the Order of the Court of |
| | : | Common Pleas of Franklin County, |
| | : | Orphans' Court Division, at 41-ADOPT- |
| | : | 2014 dated September 25, 2015. |
| | : | |
| | : | ARGUED: December 6, 2016 |

*Justice Wecht delivers the Opinion of the Court with respect to Part I, Part II(A), and Part II(C) and announces the judgment of the Court. The opinion is joined in full by Justices Donohue and Dougherty. Chief Justice Saylor and Justice Todd join the opinion, except with respect to Part II(B), and the Chief Justice files a concurring opinion, joined by Justice Todd. Justices Baer and Mundy file separate dissenting opinions, which the authors cross-join.*


**<u>OPINION</u>**


**JUSTICE WECHT**                                    **DECIDED: March 28, 2017**

This case requires us to determine whether 23 Pa.C.S. § 2313(a), which

mandates the appointment of counsel for children involved in contested involuntary

termination of parental rights ("TPR") proceedings, is satisfied by the appointment of a guardian *ad litem* ("GAL") provided that the GAL is an attorney. We hold that it is not.

## I. Background

The plain language of Section 2313(a) requires the trial court to appoint a separate, independent attorney to represent a child's legal interests in a TPR case. The trial court erred in failing to appoint such counsel, and the Superior Court erred in ruling that the GAL's involvement sufficed to satisfy Section 2313(a). Accordingly, we reverse and remand for further proceedings.

At the outset, we define the terms that provide the backdrop for our resolution of this issue. In cases involving children, the law acknowledges two separate and distinct categories of interest: a child's legal interests, which are synonymous with the child's preferred outcome,[1] and a child's best interests,[2] which the trial court must determine.

---

[1] The Comment to Pa.R.J.P. 1154 provides:

> "Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

Pa.R.J.C.P. 1154 cmt.

[2] *See In re Adoption of S.P.*, 47 A.3d 817, 820 (Pa. 2012) (court must determine child's best interests in termination of parental rights); *In re R.I.S.*, 36 A.3d 567, 573 (Pa. 2011) (child's best interests guide the court in a goal change); *In re Adoption of J.E.F.*, 902 A.2d 402, 412 (Pa. 2006) (child's best interest is the "paramount consideration" in adoption); *Moore v. Moore*, 634 A.2d 163, 168 (Pa. 1993) ("The primary concern in any custody case is the best interests of the child."); *In re B.L.L.*, 787 A.2d 1007, 1014 (Pa. Super. 2001) (discussing differences between custody and termination of parental rights (continued…)

While the best interests determination belongs to the court, statutes and rules guide the court and channel its discretion. For instance, in child custody cases, the court may appoint counsel for the child, who "shall represent the child's legal interests and zealously represent the child as any other client in an attorney-client relationship" and "shall not perform the role of a guardian *ad litem* or best interests attorney." Pa.R.C.P. 1915.11(a). Additionally, the custody court may choose to appoint a GAL "to represent the best interests of the child," and that GAL can be either an attorney or mental health professional. Pa.R.C.P. 1915.11-2(a).

In dependency cases where the trial court is required to appoint a GAL, the GAL must be an attorney. 42 Pa.C.S. § 6311(a). The GAL is authorized by statute to represent both the child's legal interests and the child's best interests. *Id.* The GAL makes recommendations to the court regarding the child's placement and needs, and must advise the court of the child's wishes, if ascertainable. 42 Pa.C.S. § 6311(b). Further, the statute explicitly provides that any difference between the child's wishes and the GAL's recommendations "shall not be considered a conflict of interest." 42 Pa.C.S. § 6311(b)(9).[3]

By contrast to this statutory authorization for a GAL in dependency proceedings, Section 2313(a) of Title 23 prescribes a different scheme for the representation of children in termination of parental rights and adoption cases.

---

(…continued)
and noting that, in termination of parental rights, child's legal interests are protected by representation of counsel).

[3]    Although Section 6311(b)(9) specifically provides that the dependency GAL has no conflict of interest when the child's best interests and legal interests diverge, this Court has suggested that, in such a instances, the GAL should request appointment of legal counsel. Pa.R.J.C.P. 1154 cmt. Indeed, we have suspended Section 6311(b)(9) to the extent that it conflicts with the rule. *Id.* cmt.

**(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).[4] No other statutory provision speaks to the appointment of counsel or a GAL in an involuntary termination of parental rights proceeding.

With this legal framework in mind, we turn to the facts of today's case. J.L.P. ("Mother") and J.D.M. ("Father") are the parents of A.D.M. (born March 2007) and L.B.M. (born May 2011). On July 2, 2013, Franklin County Children and Youth Services ("CYS") conducted a home visit with Mother. The visit was prompted by a referral alleging that Mother was on the verge of becoming homeless. The next day, Mother contacted CYS seeking to place the children due to her unstable living conditions. At the time, Father was incarcerated. That same day, the trial court ordered the children to be placed with CYS. Soon after, the children were adjudicated dependent. As required by Section 6311, the trial court appointed a GAL for the children (Attorney Kristen Hamilton) at the beginning of the dependency proceedings.

---

[4]    The comment to the statute states:

This new provision requires the court to appoint counsel for a child when parental rights are being involuntarily terminated and, when necessary, to appoint a guardian *ad litem* for a child who has not reached the age of 18 years. The guardian *ad litem* concept is broad enough to allow the appointment of a person other than a lawyer. For example, a social worker could be appointed guardian *ad litem* within this provision; in an appropriate case a nonlawyer guardian *ad litem* could request appointment of counsel.

23 Pa.C.S. § 2313 Jt. St. Gov. Comm. cmt.

On August 13, 2013, Mother pleaded guilty to possession of drug paraphernalia and was sentenced to twelve months of probation.[5] Thereafter, Mother was incarcerated, mostly due to probation violations, from July 5, 2013 to October 2, 2013, October 24, 2013 to November 6, 2013, December 12, 2013 to April 24, 2014, and May 5, 2014 to June 20, 2014.

On August 6, 2014, following Mother's repeated periods of incarceration, CYS filed a TPR petition. On November 25, 2014, after two hearings, the trial court issued findings of fact and a decree. The trial court declined to terminate Mother's parental rights, finding that Mother, while only recently released from jail, had obtained both housing and employment. Decree, 11/25/2014, at 8, 14-16.[6] Further, Mother had attended almost all of her available visits with the children and had engaged and bonded with them. *Id.* at 8-9, 18. The court expressed "grave concerns" about the effect that severance of the relationship would have on A.D.M., who was "extremely close" with Mother. *Id.* at 19. The testimony reflected that A.D.M. "desperately want[ed] to be with his mother." Notes of Testimony ("N.T."), 10/3/2014, at 60; *see also* N.T., 10/24/2014, at 38.

Following the first TPR hearing, Mother made significant progress, and the children were scheduled to be reunited with her. However, while reunification was pending, L.B.M. returned from a weekend visit with Mother with bruises on his neck and chest. Although the bruises were suspected to be non-accidental, an investigation did

---

[5]  At the time of her plea, Mother already was on probation stemming from a 2012 conviction for possession of a small amount of marijuana.

[6]  The trial court terminated Father's parental rights. He appealed, and the Superior Court affirmed the trial court's decision. *In re Adoption of A.D.M.*, 94 MDA 2014, 2015 WL 7089589 (Pa. Super. June 15, 2015) (unpublished).

not reveal their cause. Ultimately, the trial court delayed reunification in order to permit A.D.M. to finish the school year. Shortly thereafter, it was discovered that Mother had again violated her probation by living apart from her approved residence. Mother was reincarcerated. While in jail, Mother participated in visits with the children until her privileges were suspended after she tested positive for suboxone.

On August 4, 2015, the GAL filed a second TPR petition, citing both Mother's re-incarceration and the cancellation of her visitation privileges. On August 28, 2015, Mother filed a motion requesting the appointment of counsel for the children, citing Section 2313(a). Mother noted that the GAL's position "may be adverse to the [children's] position," and accordingly averred the necessity of independent counsel. Motion to Appoint Counsel for the Child, 8/28/2015, at 1.

On September 9, 2015, the trial court denied Mother's motion. In its order, the trial court chose simply to skip over the first sentence of Section 2313(a) (which mandates counsel in contested TPR cases) in favor of that provision's second sentence, which "gives this Court the discretion to appoint counsel or a GAL to represent any child who has not reached 18 years and is subject to *any other proceeding* under this part whenever it is in the best interests of the child." Order, 9/9/2015 (emphasis added). The trial court stated that, because the GAL had an established relationship with the children, the GAL's representation would best suit the children's interests. *Id.*

The trial court held hearings on the TPR petition. At the start of the proceedings, the trial judge interviewed A.D.M. A.D.M. was equivocal about his desire to be reunited with Mother. He testified that he knew that Mother cared about him, but that he nonetheless was disappointed by her inability to maintain sobriety. He further stated that he probably would choose his foster family. N.T., 9/15/2015, at 10-11. A.D.M.

expressed his desire for a final decision and his wish that, regardless of the outcome, he be allowed to maintain contact with both Mother (and her family) and his foster family. *Id.* at 17-18, 154. A.D.M.'s permanency worker testified that A.D.M.'s "first wish is always going to be with his mom." *Id.* at 161. The trial court recognized that A.D.M.'s bond with Mother was much stronger than L.B.M.'s, and that A.D.M. would be affected adversely by the termination. However, the trial court found that A.D.M. also had a strong bond with his foster parents, and that it was in A.D.M.'s best interests to sever the bond with Mother because his most important need was permanency. *See id.* at 17-18 (A.D.M. testifying that he just wanted a decision).

The trial court filed its findings of fact and decree on September 25, 2015. By that decree, the trial court terminated Mother's parental rights, finding that Mother had not remedied the conditions leading to the children's placement. In assessing the children's best interests, the court found that L.B.M.'s primary bond was with his foster parents, whom he considered to be his parents, although L.B.M. did have some bond with Mother. Decree, 9/25/2015, at 13.

Mother filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(ii) and (b). Mother alleged that the trial court erred in denying Mother's motion for the appointment of counsel, and that the trial court abused its discretion in terminating Mother's parental rights. We first address the appointment of counsel.

In support of its decision to deny Mother's motion, the trial court relied upon *In re K.M.*, 53 A.3d 781 (Pa. Super. 2012), in which the Superior Court held that Section 2313(a) did not require appointment of an attorney when a GAL, who was an attorney, had been appointed. Trial Court Opinion, 12/7/2015, at 22-24. In *K.M.*, the Superior Court addressed a TPR determination involving a three-year-old child who had never

been in the parents' care. *K.M.*, 53 A.3d at 783-84. The trial court elected not to appoint counsel for the child pursuant to Section 2313(a), although a GAL, who was an attorney, had been appointed. *Id.* at 786. The mother appealed this decision. The Superior Court identified the purpose of the section as "protect[ing] the interests of the child. Implicit in this appointment of counsel is a recognition that the interests of the child may be very different than or diverge from the interests of the other parties . . . ." *Id.* at 787.

The Superior Court concluded that Section 2313(a)'s requirements were not clear and unambiguous as applied to circumstances when the appointed GAL was an attorney. Even though the second sentence of the statute did not apply to the case, the Superior Court opined that the use in that sentence of the disjunctive "counsel or guardian *ad litem*" indicated that the legislature deemed "it would be superfluous to appoint both counsel and an attorney serving as guardian *ad litem*" in most cases. *Id.* Further, the *K.M.* court relied upon the comment to Section 2313(a), noting that a GAL could be someone other than an attorney, to bolster its conclusion that the legislature did not intend for both an attorney-GAL and an attorney to be appointed. *Id.* at 787-88. Finally, the *K.M.* court did not discern anything in the statute that precluded the GAL from acting simultaneously as legal counsel. *Id.* at 788. Accordingly, the Superior Court affirmed the trial court's refusal to appoint counsel in addition to the GAL. *Id.*

Based upon *K.M.*'s reasoning, the trial court here decided that it did was not required to appoint counsel other than the GAL.[7] A divided panel of the Superior Court affirmed upon the basis of the trial court's opinion. *In re: Adoption of L.B.M.*, 1834 MDA

---

[7] Mother filed a separate motion to appoint counsel for each child (and at each docket number). It is unclear to us whether Mother sought the appointment of one attorney for both children or the appointment of separate counsel for each child.

2015, 2016 WL 3080124 at *6 (Pa. Super. May 31, 2016) (unpublished). In dissent, Judge Strassburger opined that *K.M.* was distinguishable because of A.D.M.'s age (eight at the time of the hearing) and because of A.D.M.'s expressed wish to return to Mother, a wish which conflicted with the GAL's position. *Id.* at *33-34 (Strassburger, J., dissenting). Judge Strassburger also observed that Section 2313(a) "suggest[ed] that the legislature intended to differentiate between legal counsel and GAL in TPR proceedings." *Id.* at *34.

Presently, Mother argues that *K.M.* was wrongly decided. Brief for Mother at 7. Mother contends that the second sentence of Section 2313(a), upon which the *K.M.* Court relied, does not apply to contested involuntary TPR hearings and is thus irrelevant to the case. If anything, Mother contends, the second sentence proves that the General Assembly recognized the distinct roles that a GAL and an attorney play. Accordingly, Mother argues that the use of the term counsel in the first sentence means a "client-directed" attorney who represents the child's legal interests and not a GAL who happens to be an attorney and seeks to vindicate the child's best interests. *Id.* at 8.[8]

The GAL argues that, although Section 2313(a)'s purpose is "to ensure that the needs and welfare of a child will be actively advanced by an advocate who owes loyalty only to the child," a GAL, representing the child's best interests, is able to advocate for the child. Brief for GAL at 22 (quoting *In re Adoption of G.K.T.*, 75 A.3d 521, 527 (Pa. Super. 2013)). The GAL asserts that the age and development of a child may make it

---

[8]    Three *amicus curiae* briefs were filed in support of Mother. *See* Brief of Juvenile Court Project; Brief of Community Justice Project; Brief of Juvenile Law Center, American Civil Liberties Union of Pennsylvania, Community Legal Services, Inc., National Association of Counsel for Children, National Coalition for a Civil Right to Counsel, and Pennsylvania Legal Aid Network. All three *amici* argue that Section 2313(a) is unambiguous, highlight differences between legal and best interests and the potential conflicts inherent therein, and provide policy justifications for providing counsel for the child.

impossible for an attorney to be client-directed. The GAL contends that, since the GAL often has represented the child's best and legal interests pursuant to the Juvenile Rules in dependency, that dual role should continue through the termination process. *Id.* at 23.

CYS also argues that, because Section 6311 contemplates the GAL's advocacy on behalf of both the best interests and the legal interests of the child in dependency cases, it would be inefficient not to extend that dual role into and through TPR proceedings. Brief for CYS at 30-32.[9] CYS points to potential problems with the mandatory appointment of counsel in addition to a GAL, such as the children's age and capacity to form and express preferences and the possible need for separate attorneys for each of multiple children in a family when children's legal interests diverge. *Id.* at 32-33.


## II. Analysis

## A. Appointment of Counsel

Because our resolution of this issue necessarily requires us to interpret Section 2313(a), our standard of review is *de novo*. *Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 10 (Pa. 2015).

> The purpose of statutory interpretation is to ascertain the General
> Assembly's intent and give it effect. 1 Pa.C.S. § 1921(a). In discerning

---

[9] CYS suggests briefly that this appeal should be dismissed because the issue of counsel for the children was not raised in the first TPR proceedings and because Mother did not immediately appeal the denial of counsel. Brief for CYS at 18. CYS cites no rule or decisional law to support this contention. Because this request has not been developed, we will not review it. *See Commonwealth v. Spotz*, 18 A.3d 244, 262 n.9 (Pa. 2011) ("This sub-claim has not been developed factually or legally, and it is not supported with citations to relevant decisional or statutory law . . . it is waived for lack of development.").

that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). "Relatedly, it is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision." *Oliver v. City of Pittsburgh,* 11 A.3d 960, 965 (Pa. 2011) (citations omitted).

*Mohamed v. Commonwealth, Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1193 (Pa. 2012) (citation modified).

The language of Section 2313(a) at issue in this contested TPR case reads, in pertinent part, "The court shall appoint counsel to represent the child . . . ." "The word 'shall' by definition is mandatory and it is generally applied as such." *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007) (citation omitted). When a statute is unambiguous, "shall" must be construed as mandatory. *Id.* Here, the use of "shall" is unambiguous and hence, mandatory. The statutory language does not suggest anything other than the general meaning of the word. By contrast, the statute's second sentence uses the term "may" in connection with "any other proceeding" (*i.e.,* anything other than a contested TPR) evidencing the fact that our General Assembly knows well how to use non-mandatory language when it wishes to do so. The lawmakers codified a mandatory appointment of counsel for contested TPR cases, and, in the very next sentence, codified a discretionary provision for other proceedings.[10] There is no ambiguity in the statute. We may not manufacture one.

---

[10] My learned colleague Justice Mundy agrees that the first sentence of the statute controls this case, Mundy, J., dissenting. at 2-3, but asserts that we are "mistakenly reading the first and second sentences in conjunction with each other." *Id.* at 3. To the contrary, we acknowledge the second sentence only to demonstrate that the General Assembly recognized the difference between counsel and a GAL.

As well, it bears noting that the recognized purpose of the statute is to ensure that the needs and welfare of the children involved are actively advanced.[11] To hold otherwise would afford courts the discretion to deny counsel to children involved in contested TPR proceedings, which not only would disserve the purpose of the statute, but also would contradict its express terms.

"Counsel" also is clear and unambiguous. The second sentence of the statute is instructive, inasmuch as it demonstrates that the legislature recognized and understood the difference between counsel and a GAL. In cases other than involuntary (*i.e.*, contested) TPRs, the General Assembly has instructed that either counsel or a GAL adequately can represent the child's interests. However, when a child's relationship with his or her birth family could be severed permanently and against the wishes of the parents, the legislature made the policy judgment, as is evident from the plain, unambiguous language of the statute, that a lawyer who represents the child's legal interests, and who is directed by the child, is a necessity. It is not our role to second-guess the policy choice made and expressed by the General Assembly. Nor is the legislative choice surprising; appointment of client-directed counsel optimizes the

---

[11] In *In re Adoption of N.A.G.*, 471 A.2d 871 (Pa. Super. 1984), the Superior Court explained that the statutory requirement for appointment of counsel was the legislative answer to Justice Manderino's dissenting statements in *Matter of Kapcsos*, 360 A.2d 174 (Pa. 1976) and *In re Thomas*, 99 A.2d 1063 (Pa. 1979), that, because the legislature had not provided for the appointment of counsel for children, the courts must do so. *Id.* at 874 n.2. *See In re Adoption of Hess*, 562 A.2d 1375, 1381 (Pa. Super. 1989) ("[t]he purpose of 2313(a) is to ensure that the needs and welfare of a child will be actively advanced by an advocate who owes loyalty *only* to the child.") (emphasis in original). Justice Mundy attempts to distinguish *Hess* by quoting its invocation of the child's best interests. Mundy, J., dissenting at 5. This is wholly uncontroversial, but, respectfully, it misses the point. The issue here is not whether or not the child's best interests must be served (they must), but rather whether the General Assembly's mandate that counsel must be appointed for the child may be subverted or ignored (it may not).

protection of the child's needs and welfare, which form the ultimate issue that the trial court must resolve before granting the TPR. Because the statute is clear and unambiguous, and because the application of the plain language gives effect to the General Assembly's intent, we hold that Section 2313(a) requires the appointment of counsel who serves the child's legal interests in contested, involuntary TPR proceedings.[12]

## B. Service of GAL as Counsel

Having determined that the court must appoint counsel to represent the child's legal interest, we next consider whether a GAL may serve in that role. Because the GAL is familiar with the case and has represented the child's legal interests in the dependency case to the extent permitted by Pa.R.J.C.P. 1154 and Section 6311, there is some facial appeal in pressing (or allowing) the GAL into service as the child's counsel for the TPR proceedings.[13] Moreover, because the Adoption Act does not

---

[12] Justice Mundy contends that there is no reason to conclude that section 2313(a) requires representation of "the child's legal interests, and not best interests." Mundy, J., dissenting at 4. However, the General Assembly chose to use the term "counsel." Had the General Assembly believed that an attorney representing both best and legal interests of the child would be sufficient to protect all of a child's interests, it certainly could have imported language into the Adoption Act similar to that utilized in the dependency statute, *see* 42 Pa.C.S. § 6111(b)(9), in which the legislature authorized a GAL to represent both species of interests. It did not do so, signaling its clear intention that section 2313(a) counsel must represent the child's legal interests.

[13] The GAL only represents the child's legal interests to the extent permitted by rule and statute within the limited context of the dependency proceedings, and only to the extent that there is no conflict with the GAL's determination and advocacy of the child's best interests. In contested TPR proceedings, per the General Assembly's directive, no attorney is assigned to represent the child's best interests. Respectfully, my learned colleague Justice Baer's desire to "allow[ ] the child to have continuity of representation between the dependency and termination proceedings. . .," Baer, J., dissenting at 7, obscures this distinction and conflates the roles of GAL and counsel for the child. In context, this "continuity" becomes a mechanism by which the child is judicially divested of the independent attorney that the General Assembly has mandated for that child.

require the appointment of a GAL, it might be suggested that the dependency GAL would not have to act as GAL during the TPR and could serve solely as the child's lawyer in that latter proceeding, converting, as it were, to the "counsel" role specified by statute. But practical concerns militate against such dual service for the GAL. First, if the dependency GAL also was appointed as counsel for the TPR, all of those involved — the court, the lawyers, the parties, the agencies — would have to be clear about the distinction between the roles: to wit, that the GAL advocates for the child's best interests while counsel advocates for the child's legal interests. That change in roles, and the subtle yet important distinction between those roles, has the potential to breed confusion for the child as well as other parties. Second, the dependency proceedings generally remain ongoing when the TPR petition is filed and may well continue, as they indeed did here, in the event that the petition is denied. To permit the dependency GAL to serve also as the TPR counsel while proceedings in each matter are ongoing increases the risk of confusion and may force the attorney to take conflicting stances in the proceedings depending on the role being performed at the time. These concerns argue against the GAL serving additionally in the distinct role of TPR counsel.

We recognize that providing a new attorney as counsel for the child carries a cost. In addition to an appointed counsel's fee, there may be delays while counsel prepares for the TPR proceedings and interviews the child and any other parties or witnesses. In some cases, the child may be too young to express his or her wishes. In other cases, as CYS notes, an attorney, guided by Pa.R.P.C. 1.7 (Conflicts of Interest), may determine that he or she ethically cannot represent multiple children in a family because the children's legal interests diverge. However, the language of Section 2313(a) is clear. The General Assembly has made the policy decision that these are the costs of ensuring that a child is represented adequately during a contested,

involuntary TPR proceeding. Recognizing the legislative will, and in view of the risks posed by dual representation with conflicting oligations, the dependency GAL should not be employed as the child's counsel in TPR proceedings. [14]

Here, the trial court denied Mother's motion to appoint counsel, citing the inapplicable second sentence of Section 2313(a) and finding that the GAL could represent the children's interests. The court erred in failing to appoint counsel for the children. It was clear that the GAL was representing the children's best interests and not their legal interests. *See* N.T., 10/24/2014, at 59 (GAL at closing of first TPR proceeding stating, "So I can't say that I don't appreciate [A.D.M.'s] position [that he wants to return to Mother]. But I don't believe at this point he understands what's best for him."). Section 2313(a) requires counsel to advocate on behalf of the children's legal interests. Counsel was not appointed here. Therefore, the Superior Court erred in affirming the trial court. To the extent that *K.M.* does not align with our holding, that decision was erroneous and is overruled.

## C. Treatment of Error

Having found that the trial court erred, we must next determine the effect of that error. The GAL suggests that, if error, the failure to appoint counsel was harmless.

---

[14] Justice Baer suggests that the dependency GAL, bound by Pa.R.P.C. 1.7, could continue to represent the child in the TPR hearing because the dependency GAL would be required to seek appointment of counsel should there be a conflict of interest. Baer, J., dissenting, at 8. This essentially would make the GAL the arbiter of the child's right to counsel. The right belongs to the child. That child generally is not in a position to assert, much less to advocate, the presence of a conflict of interest. By mandating counsel who represents the child's legal interest in TPR proceedings, the General Assembly sought to vindicate and protect the child's right to counsel. Justice Baer maintains that "no universal disqualifying impediment exists to prevent a dependency proceeding GAL Attorney" from switching hats in order to represent a child's legal interests at a TPR hearing. But such an impediment does in fact exist, and we are not authorized to wish it away. It is Section 2313(a) of the Adoption Act.

Brief for GAL at 43-44. CYS concurs. Brief for CYS at 36. Mother does not address the issue directly. She asserts merely that the error justifies a new hearing. Brief for Mother at 15.

The most developed treatment of the issue lies in the *amicus curiae* brief submitted jointly by the Juvenile Law Center, the American Civil Liberties Union of Pennsylvania, Community Legal Services, Inc., the National Association of Counsel for Children, the National Coalition for a Civil Right to Counsel, and the Pennsylvania Legal Aid Network (hereinafter, collectively, "Juvenile Law Center"). The Juvenile Law Center notes that, in criminal proceedings, denial of counsel is deemed a structural error, requiring reversal without the need to demonstrate prejudice. *Id.* at 27-28. The Juvenile Law Center asserts that courts generally have extended other criminal law protections to TPR cases because of the importance of the right involved in termination, and maintains that we should deem the failure to appoint counsel a structural error. *Id.* at 28-29. The rationale for structural error's applicability to criminal cases applies equally to TPR cases, according to the Juvenile Law Center. To wit, it is impossible to determine the effect that counsel who was not present would have had and to attempt to gauge the harmfulness of the failure to appoint counsel.[15] To do so would be an exercise in speculation. *Id.* at 30-31. Further, the absence of counsel "calls into

---

[15] While he agrees that failure to appoint counsel is a structural error, Baer, J. dissenting, at 8, Justice Baer nonetheless suggests that remand is unnecessary in this case because "the record does not support Mother's assertion that a conflict of interest existed between A.D.M.'s legal and best interests during the second termination proceeding." *Id.* at 9-10. We cannot know how the record was impoverished by the failure of the trial court to comply with the statute's requirements that A.D.M. be provided with counsel charged with representing his legal interests. Counsel representing A.D.M.'s legal interests may have developed testimony from A.D.M. that was less equivocal about his wishes. It is this very speculation that shows the impossibility of determining *post hoc* the effect of the failure to appoint counsel and that compels the conclusion that this failure was structural error.

question the very structural integrity of the fact-finding process." *Id.* at 31-32 (quoting *In re J.M.B.*, 676 S.E.2d 9, 12 (Ga. Ct. App. 2009)). For these reasons, the Juvenile Law Center advocates that a harmless error approach is untenable.

A structural error is defined as one that affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Commonwealth v. Baroni*, 827 A.2d 419, 420 (Pa. 2003) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Structural errors are not subject to harmless error analysis. *Id.* Generally, denial of counsel is a structural error, *see Commonwealth v. Martin*, 5 A.3d 177, 192 (Pa. 2010); although such error usually stems from deprivation of a constitutional right to counsel. Here, by contrast, the right to counsel is statutory. Nonetheless, we do not find that distinction to be determinative. The same concerns are evident regardless of the derivation of the right. Whether the right to counsel is conferred by constitution or statute, the right having been conferred must be protected.

In criminal and TPR cases alike, critical rights are at stake. With respect to the former, the framers of our Constitutions, and the courts interpreting those charters, have determined that counsel was required to ensure that liberty interests and process rights are protected. With respect to the latter, our General Assembly has decided that counsel for the child is required because of the primacy of children's welfare, the fundamental nature of the parent-child relationship and the permanency of termination. The legislature has codified a process that affords a full and fair opportunity for all of the affected parties to be heard and to participate in a TPR proceeding. The denial of mandated counsel compromises the framework of the proceedings and constitutes a structural error. Further, as suggested by the Juvenile Law Center, harmless error analysis would require speculation after the fact to evaluate the effect of the lack of appointed counsel, effectively requiring proof of a negative. For all of these reasons, we

hold that the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis.

Because the trial court erred in failing to appoint counsel for the children, and because that error is structural, we remand for a new TPR proceeding following the appointment of counsel. Because of the remand, we need not reach, and we express no opinion regarding, Mother's challenge to the trial court's finding on the merits that Mother's parental rights should be terminated.

Justices Donohue and Dougherty join the opinion.

Chief Justice Saylor files a concurring opinion in which Justice Todd joins.

Justice Baer files a dissenting opinion in which Justice Mundy joins.

Justice Mundy files a dissenting opinion in which Justice Baer joins.