J-S53003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Z. N. F., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H. F., MOTHER | No. 964 EDA 2017 |

Appeal from the Order Entered February 24, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-DP-0002596-2014
CP-51-AP-0000146-2017

| | |
|---|---|
| IN THE INTEREST OF: Z. E. A. F., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H. F., MOTHER | No. 974 EDA 2017 |

Appeal from the Order Entered February 24, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0000147-2016
CP-51-DP-0002593-2014

BEFORE: BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED MAY 09, 2018**

H.F. (Mother) appeals from the February 24, 2017 orders that granted the petitions filed by the Philadelphia Department of Human Services (DHS) to involuntarily terminate Mother's parental rights to Z.N.F., born in July of

2013, and Z.E.A.F., born in May of 2011, (Children) and to change the goal for Children to adoption.[1]  We vacate and remand.

In its opinion, the trial court set forth the factual and procedural history of this case, as follows:

> The Children's family became known to the Department of Human Services ("DHS") on July 6, 2013 through a Child Protective Service ("CPS") report alleging Mother tested positive for marijuana when Z.N.F. was born [i]n July [of] 2013.  At the time, Father[2] did not reside with Mother and Child.  In January 2014[,] DHS learned that Mother had been evicted from her home.  Thereafter, Mother found new housing but was evicted again in March 2014 and Mother and Child began residing at the People's Emergency Center ("PEC").  While at PEC, Child's finger was severed as a result of an accident while he was playing unattended.
>
> On January 22, 2015, the Honorable Jonathan Irvine adjudicated the Children dependent.  On March 10, 2015[,] the Community Umbrella Agency ("CUA") held a Single Case Plan ("SCP") meeting.  The SCP objectives established for Mother were (1) to produce negative drug screens; (2) to continue to meet with her therapist; (3) to remain in a shelter in order to qualify for Blue Print Housing; (4) to comply with the shelter rules; (5) to schedule and attend all of the Children's medical appointments; (6) to comply with all … drug screens; and (7) to meet with her CUA Case Manager.
>
> At a permanency review hearing held on October 22, 2015, Mother and Father appeared before Master Alexis Ciccone who ordered that the Children remain committed.  Mother was referred to the Clinical Evaluation Unit ("CEU") for an evaluation and three random drug screens.  On January 20, 2016, CEU

_____

[1] Mother's two appeals were consolidated *sua sponte* by order of this Court, dated April 3, 2017.

[2] Father is not a party to this appeal.

issued a Progress Report for Mother reporting that she did not complete a drug and alcohol assessment on October 22, 2015; that she failed to attend a re-scheduled appointment on November 3, 2015; and that she had no contact with CEU.

A permanency review hearing was held on January 21, 2016. Mother and Father appeared at this hearing. Mother was again referred to the CEU for an assessment and a drug screen. On March 21, 2016, the SCP objectives identified for Mother remained the same but included an additional term th[at] she attend all court hearings. On October 20, 2016, CEU completed a Progress Report indicating that Mother did not provide documentation of her current treatment status and she refused to provide a urine sample on July 21, 2016.

On or about February 7, 2017, DHS filed the underlying Petition to Terminate Mother's Parental Rights to the Children. On February 24, 2017, this [c]ourt ruled to terminate Mother's parental rights pursuant to 23 Pa.C.S.[] § 2511(a) (1)[,] (2)[,] (5) and (8) and that the termination of the Mother's rights was in the best interest of the Children pursuant to 23 Pa.C.S.[] § 2511(b). The [c]ourt ruled that the Children's goal be changed to adoption. Thereafter, Mother filed a Notice of Appeal on March 22, 2017.

Trial Court Opinion (TCO), 4/27/17, at 2-4 (citations to the record omitted).

Following its rendition of the facts and procedural history, quoted above, the trial court discussed the testimony presented by the CUA representative, who explained Mother's failure to meet her SCP objectives and to complete her random drug screens. The CUA representative also testified about Children's living with a paternal aunt since 2015, who is considered to be a pre-adoptive placement. The CUA representative further indicated that a goal change to adoption was in Children's best interest. Based upon this testimony and the submission of documentary evidence, the court concluded that Mother's parental rights should be terminated, a

decision that would be in Children's best interest. *Id.* at 8. The court also changed the goal for Children to adoption.

On appeal, Mother raises the following issues for our review:

A. Whether the trial court erred in involuntarily terminating the Mother's parental rights where it was not supported by clear and convincing evidence when the Mother completed a substantial portion of her FSP/SCP goals?

B. Whether the trial court erred in involuntarily terminating the Mother's parental rights where … the bonding evaluation was incredible in that the Mother had consistently visited her Children and there was a bond between the Mother and Children and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of the Children?

Mother's brief at 5 (unnecessary capitalization omitted).[3]

Based upon her arguments relating to the above stated issues, Mother's brief contains a request that the termination of her parental rights be reversed. In the alternative, Mother asks that "this matter should be remanded for appointment of a children's attorney and a hearing should be held on whether the children wish to be adopted at this time." *Id.* at 16 (citing *In re: Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017)).

We are aware that Athena Mary Dooley, Esq., has entered her appearance in this Court and is identified as the attorney for Children. Additionally, Attorney Dooley, who attended the February 24, 2017 hearing

---

[3] No issue has been raised relating to the goal change.

before the trial court, is identified in the transcript of that hearing as a child advocate. In fact, the record contains a copy of an order, dated November 4, 2014, appointing counsel as a child advocate, yet no name identifying an attorney is stated in the order. However, the record also contains a dependency court pre-hearing conference report that identifies Attorney Dooley as the child advocate. Without more, we are unable to identify whether Attorney Dooley is acting in the role of a guardian *ad litem* (GAL), who is appointed to represent Children's best interests, as an independent attorney, who represents Children's legal interests, or whether Attorney Dooley is acting in both capacities simultaneously.

In ***In re: D.L.B.***, 166 A.3d 322 (Pa. Super. 2017), with reliance on the ***L.B.M.*** case, this Court stated that "23 Pa.C.S.[] § 2313(a) requires the trial court to appoint counsel for a child in a termination of parental rights ("TPR") case, and that the failure to do so is structural and can never be harmless." ***Id.*** at 329. The ***D.L.B.*** case further states:

> As a point of information, Justice Wecht's opinion in ***L.B.M.*** states that the trial court is required to appoint a separate, independent attorney to represent a child's legal interests even when the child's GAL, who is appointed to represent the child's best interests, is an attorney. Justice Wecht would hold that the interests are distinct and require separate representation. While Justice Wecht, joined by Justices Donohue and Dougherty, sought to so hold, four members of the court, Chief Justice Saylor and Justices Baer, Todd, and Mundy disagreed in different concurring and dissenting opinions with that part of the lead opinion's holding. Specifically, while the other justices agreed that the appointment of counsel for the child is required in all TPR cases and that the failure to do so by the trial court is a structural error, they did not join that part of Justice Wecht's

> opinion which sought to hold that the GAL may never serve as counsel for the child. Rather, such separate representation would be required only if the child's best interests and legal interests were somehow in conflict.

*Id.*

We are also aware of a very recent opinion filed by this Court, wherein we recognized that "[t]his court must raise the failure to appoint statutorily-required counsel for children *sua sponte*, as children are unable to raise the issue on their own behalf due to their minority." ***In re Adoption of: T.M.L.M.***, ___ A.3d ___, 2018 PA Super 87, *2 (filed April 13, 2018) (citing ***In re K.J.H.***, ___ A.3d ___, 2018 PA Super 37 (filed February 20, 2018)). In the ***T.M.L.M.*** case, this Court stated that,

> effective representation of a child requires at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that [the c]hild wants no contact with [the m]other. [The c]hild may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of [the m]other's rights may still be appropriate even if [the c]hild prefers a different outcome. However, pursuant to the Supreme Court's opinion in Section I and II-A of ***L.B.M.***, it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests. ***L.B.M.***, 161 A.3d at 174, 180.

***T.M.L.M.***, at *4. Accordingly, the termination order in ***T.M.L.M.*** was vacated and the case was remanded for the appointment of counsel to represent the child's legal interests.

In contrast, the **D.L.B.** Court found the child's best interests and legal interests were not in conflict and were represented by the attorney appointed as the child's GAL. Here, we are unable to discern what role Attorney Dooley performed or even whether Children's best interests and/or legal interests were or were not in accord. A question also arises with regard to whether there is conflict between each child's best and legal interests. Accordingly, we are compelled to vacate the termination/goal change orders from which Mother appealed and remand this matter so that a new hearing may be held to determine the answers to these factual questions. Moreover, if a conflict between legal interests and best interests is revealed and/or if a conflict exists between each child's separate interests, then the trial court is directed to appoint the necessary attorney(s) to protect Children's interests. Depending upon the determination as to the attorney issue, the court shall then ascertain whether a new termination hearing must be held with the inclusion of proper representation of the interests of Children.

Orders vacated. Cases remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/18