J-S46001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: S.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.M., MOTHER | : | No. 3904 EDA 2017 |

Appeal from the Order Entered November 13, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0002845-2015

BEFORE: BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                          **FILED AUGUST 30, 2018**

A.M. ("Mother") appeals from the order denying her motion for reunification with her daughter S.M. We affirm.

S.M., who was born in 2007, lived with Mother until 2015, when the Philadelphia Department of Human Services ("DHS") received a report that a sex offender was living in Mother's home and filed a dependency petition. At the subsequent hearing, DHS presented evidence that S.M.'s live-in stepfather ("Stepfather") had been convicted of possession and dissemination of child pornography. The evidence further showed that Mother was aware of the conviction, yet nonetheless allowed Stepfather to have unsupervised contact with S.M. because Mother trusted him. Juvenile Court Opinion, 1/10/18, at 2. As a result of the juvenile court's concern about the nature of Stepfather's offense, the risk Stepfather posed to S.M., and Mother's resistance to complying with DHS's safety plan, S.M. was adjudicated dependent and placed

with her paternal grandparents, with Mother having supervised visitation. S.M.'s permanency goal was "return to parent or guardian." *See*, *e.g.*, Permanency Review Order, 6/29/16, at 1.

S.M. was not properly cared for by paternal grandparents, and her mental health needs[1] overwhelmed a foster parent, resulting in subsequent placement with her maternal grandmother. Meanwhile, Mother progressed to unsupervised visits, with measures taken to ensure that Stepfather did not have unsupervised contact with S.M., as a stay-away order prohibiting Stepfather from having contact with S.M. had been entered in 2016. *Id*. at 5-6. While her visits with Mother went well, S.M. exhibited behavioral problems at school despite receiving in-school services for emotional and therapeutic support. *Id*.

At permanency review hearings, Mother maintained her position that Stepfather was a father-figure to S.M., that S.M. had bonded with him, and that S.M. desired to return to Mother's home. *Id*. at 5. However, the juvenile court maintained the stay-away order and refused to return S.M. to Mother. Indeed, concluding that Mother's home remained unsafe for S.M., the juvenile court declined reunification and placed her with her biological father ("Father") in October 2017.

---

[1] S.M. was diagnosed with attention deficit hyperactivity disorder, oppositional defiant disorder, bi-polar disorder, and post-traumatic stress disorder, and took several medications including Adderall. Juvenile Court Opinion, 1/10/18, at 3-5.

- 2 -

Mother sought reconsideration of the court's denial of her request for reunification, and a hearing was held on November 13, 2017. At that proceeding, DHS and S.M.'s child advocate acknowledged that S.M. was thriving in Father's care. *Id*. at 6. S.M. testified *in camera* that she enjoyed visiting Mother, but was happy residing with Father and wanted to continue to live with him. *Id*. Concluding that "the dependency issues still existed in Mother's home" and that S.M.'s needs and welfare were best served by remaining in Father's home, the juvenile court denied Mother's motion. The court further "refused to allow Mother to have overnight visits with [S.M.] due to its concern that Stepfather might have unsupervised contact with [her], despite the existence of the stay-away order." *Id*. at 7.

Mother filed a timely notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The juvenile court authored its opinion, and the matter is ripe for our review. Mother presents this Court with the following questions.[2]

> 1. Did the [juvenile] court err and/or abuse its discretion by denying Mother and Child their U.S. and Pennsylvania constitutional and statutory rights in light of *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), *cert. denied* ___U.S. ___, 138 S. Ct. 925 (Jan. 21, 2018)?

---

[2] Mother raises additional complaints in the body of her brief, such as the juvenile court's suggestion that Stepfather take a polygraph test to demonstrate his purported lack of arousal by children, and the use of a dependency proceeding to transfer custody to a child's non-custodial parent. Mother's brief at 22. These issues are not properly before us, as they were neither raised in Mother's Rule 1925(a)(2)(i) statement nor included as questions presented in her appellate brief.

2. Did the [juvenile] court err and/or abuse its discretion by denying Mother's Motion for Reunification in light of the holding in *Commonwealth v. Muniz*, *supra*, which holding removed the purported legal basis for the adjudication of dependency pursuant to the Pennsylvania Juvenile Act, 42 Pa.C.S. [§] 6301 *et seq*., and the Pennsylvania Child Protection Services Act, 23 Pa.C.S. § 6301 *et seq*.?

Mother's brief at 4.

We begin with our standard of review. "In dependency matters, we review the trial court's order pursuant to an abuse of discretion standard of review." *In Interest of H.K.*, 172 A.3d 71, 74 (Pa.Super. 2017). "As such, we must accept the court's findings of fact and credibility determinations if they are supported by the record, but we need not accept the court's inferences or conclusions of law." *Id*.

Mother's arguments are based upon our Supreme Court's decision in *Muniz*. In that case, the Court held that the requirements set forth by our legislature in the Sex Offender Registration and Notification Act ("SORNA") were punitive, and thus could not be applied retroactively given the Pennsylvania constitution's prohibition against *ex post facto* laws. It is Mother's contention that the effect of *Muniz* "is to nullify the purported basis for S.M.'s adjudication of dependency, and no other dependency issues exist." Mother's brief at 21. We disagree.

The dependency petition that commenced this case alleged, *inter alia*, that Mother has a history of drug use, was taking double her prescribed dosage of oxycodone, and was not always able to meet S.M.'s dietary and hygiene

needs; and that Stepfather was arrested in 2001 and charged with twenty counts of possession of child pornography and six counts of dissemination of photographs or films of children in sex acts, pled guilty to some of the charges, and was ordered to serve jail time and register under Megan's Law. Dependency Petition, 10/29/15, at ¶¶ a, o. The juvenile court expressed concern about Mother's substance abuse and Mother's ability to provide parental care given her insistence that S.M. be allowed to have unsupervised contact with a person convicted of child pornography offenses. N.T. Adjudication, 1/11/16, at 60-61. The record reflects that S.M. was adjudicated dependent based upon the following finding: "The child is without the proper care or control, subsistence, education as required by law, or other care or control necessary for [her] physical, mental, or emotional health, or morals." Order of Adjudication, 1/11/16, at 1.

Contrary to Mother's contention, S.M. was not adjudicated dependent simply because Stepfather was required to register under SORNA at the time, nor based upon any finding of abuse under the Child Protective Services Law. 23 Pa.C.S. § 6303 (including within the definition of child abuse leaving a child unsupervised with someone known to be required to register as a Tier II or Tier III sexual offender under SORNA). Therefore, Mother's contention that *Muniz*'s invalidation of Stepfather's SORNA responsibilities destroyed the entire foundation of the dependency action, or negated the dependency

court's jurisdiction, or somehow violated Mother's fundamental parental rights, is simply not grounded in fact.

The remaining issue is whether the juvenile court abused its discretion in denying Mother's motion for reunification.[3] Mother argues that "the juvenile court found that even though there were no dependency issues in [Mother's] home[,] reunification would not be allowed, thus refusing to fully reinstate Mother's fundamental right to the care, custody[,] and control of S.M. without any evidence of past harm or future threat." Mother's brief at 23.

Again, Mother's position is detached from reality. Whether or not Stepfather has to register as a sex offender, **he has an admitted history of child sexual abuse**. *See* 18 Pa.C.S. § 6312 (identifying crimes of possession and dissemination of child pornography as constituting sexual abuse of

_____

[3] Mother includes in this argument a contention that S.M.'s due process rights were violated because the court did not appoint an attorney separate from her guardian *ad litem* to represent her wishes. Mother's brief at 25 (citing ***In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017)). The issue decided in ***L.B.M.*** was "whether 23 Pa.C.S. § 2313(a), which mandates the appointment of counsel for children involved in contested involuntary termination of parental rights ('TPR') proceedings, is satisfied by the appointment of a guardian ad litem ('GAL') provided that the GAL is an attorney." ***L.B.M.***, ***supra*** at 174. At the time of the proceedings at issue in the instant appeal, ***L.B.M.***'s holding had not been extended beyond TPR proceedings. However, while this appeal was pending, this Court extended the requirements of ***L.B.M.*** and its progeny to dependency actions generally. ***See In re J'K.M.***, ____ A.3d ____, 2018 WL 3121360 (Pa.Super. June 26, 2018) (reversing order denying appointment of a separate counsel for dependency proceedings where there was a conflict between the child's best interests and legal interests). Accordingly, if the juvenile court determines there is a conflict between S.M.'s wishes and her best interests, S.M. must have separate legal counsel to advocate for those disparate interests in future proceedings.

children). Her stubborn insistence that "there is no legal or factual basis anymore" for S.M. not to be left alone with Stepfather itself validates the juvenile court's decision that the circumstances that led to the initial adjudication of dependency still exist in Mother's home. **See** N.T. Reconsideration, 11/13/17, at 15; Juvenile Court Opinion, 1/10/18, at 9 (indicating that Mother's home remains unsafe because a sex offender is still residing there).

Given that the child advocate and DHS have continuing concerns that Mother will allow Stepfather to have unsupervised contact with S.M., **see** N.T. Reconsideration, 11/13/17, at 14-15, and that S.M. is happy and thriving in her current placement with Father, **id**. at 6, the juvenile court's findings are supported by the record. Further, Mother has not demonstrated that the decision "was manifestly unreasonable, that the court disregarded the law, or that its action was a result of partiality, prejudice, bias or ill will." **In Interest of L.T.**, 158 A.3d 1266, 1276 (Pa.Super. 2017) (internal quotation marks omitted). Accordingly, we hold that the juvenile court did not abuse its discretion in denying Mother's motion for reunification.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/30/18</u>