J-S45018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE ADOPTION OF: A.G.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF T.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1223 MDA 2023 |

Appeal from the Decree Entered August 7, 2023
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2021-2199

| | | |
|---|---|---|
| IN RE ADOPTION OF: A.T.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1224 MDA 2023 |

Appeal from the Decree Entered August 7, 2023
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2021-02200

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED: FEBRUARY 2, 2024**

T.R. (Mother) appeals[1] from the decrees, entered in the Court of

Common Pleas of Lancaster County Orphans' Court Division, granting a

petition for adoption and involuntarily terminating her parental rights to her

---

[*] Former Justice specially assigned to the Superior Court.

[1] On September 18, 2023, our Court *sua sponte* consolidated the appeals at
1223 MDA 2023 and 1224 MDA 2023.  **See** Pa.R.A.P. 513.

two minor children, A.G.R. (born 1/2014) and A.T.R. (born 3/2008) (collectively, Children). After careful review, we reverse and remand with instructions.

Mother and A.R. (Father) began dating in 2000; they had three children together, A.R.,[2] A.T.R., and A.G.R. In July 2019, the parties separated. In February 2020, Father filed a protection from abuse (PFA) petition against Mother. On February 24, 2020, the court entered a temporary PFA order requiring Mother to stay away from Father's residence, but permitting the parties to mutually agree that Mother have contact with Children "through a third-party."[3] Temporary PFA Order, 2/24/20, at ¶¶ 3, 5. During the time that the temporary PFA was in effect (2/24/20-9/2/20), Mother was charged with indirect criminal contempt for contacting Father in violation of the PFA.

On February 28, 2020, Mother filed a *pro se* custody complaint seeking custody of Children. Mother failed to appear at a scheduled custody conference on June 15, 2020, and, as a result, Father was awarded sole legal and physical custody of Children, with Mother being granted partial physical custody as agreed to by the parties.

Following a PFA hearing, on September 2, 2020, the court entered a final PFA order, by agreement and without admission of wrongdoing, against Mother protecting Children and Father. The order, which was in effect until

[2] A.R. is over the age of 18 and, thus, not a party to this matter.

[3] Paternal grandmother and paternal aunt were the designated intermediaries.

September 2, 2021, incorporated the terms of the June 15, 2020 custody order and also included the following provision: "Non-harassing, non-threatening, email communication about the [C]hildren only is authorized between the parties." Final PFA Order, 9/2/20, at ¶ 5 (Father's Exhibit 5).

On October 25, 2020, Father and Stepmother married. Children have resided with Father and Stepmother since July 2019. On August 4, 2021, Father and Stepmother filed a petition to involuntarily terminate Mother's parental rights to Children and for Stepmother to adopt Children. *See* 23 Pa.C.S.A. §§ 2512(a)(1). On August 8, 2021, A.T.R. signed a consent to be adopted by Stepmother.

Four hearings were held on March 15, 2022, November 22, 2022, January 27, 2023, and April 14, 2023. On August 7, 2023, the trial court entered decrees involuntarily terminating Mother's parental rights to Children pursuant to subsections 2511(a)(1) and (b) of the Adoption Act.[4] The court found that Mother "did not demonstrate reasonable firmness in attempting to overcome any obstacles Father implemented to prevent her from seeing Children." Trial Court Opinion, 9/26/23, at 18.

Mother filed a contemporaneous notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i). Mother raises the following issues for our consideration:

---

[4] 23 Pa.C.S.A. §§ 2101-2938.

> (1) Whether the [c]ourt erred in finding that Petitioner[]s met their burden under 23 Pa.C.S.A. § 2511(a)(1) when Petitioner Father places obstacles in Mother's path [to] prevent [her having] contact with [C]hildren?
>
> (2) Whether the [c]ourt erred in finding that terminati[ng Mother's] parental rights met the needs and welfare of [C]hildren under § 2511(b)?

Appellant's Brief, at 4.

Before turning to Mother's claims on appeal, we must first *sua sponte* address Children's right to counsel in the underlying contested termination of parental rights proceedings. Pursuant to 23 Pa.C.S.A. § 2313:

> (a) Child. — The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a) (italics added). Moreover, "a single attorney cannot represent a child's best interest and legal interest if those interests conflict." *In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020) (citation omitted). While "a child's legal interests . . . are synonymous with the child's preferred outcome," a child's best interests must be determined by the trial court, with guidance from "statutes and rules." *In re Adoption of L.B.M.*, 161 A.3d 172, 174-75 (Pa. 2017). *See also In re T.S.*, 192 A.3d 1080, 1082 n.2 (Pa. 2017) (citations omitted) (legal interests involves attorney expressing child's wishes regardless of whether attorney agrees with child's recommendation and best interests involves guardian *ad litem* expressing

what guardian *ad litem* believes is best for child's care, protection, safety, and wholesome physical and mental development, regardless of whether child agrees).

By order, effective January 11, 2022, the court appointed Catherine I. Roland, Esquire, as guardian *ad litem* for Children, stating that Attorney Roland was "to notify the [c]ourt and Petitioners, within 20 days, whether separate legal counsel needed to be appointed to represent Children." **See** Order, 1/14/22.[5] When Attorney Roland later requested that counsel be appointed to represent Children's legal interests, the court appointed Jeffrey Shank, Esquire, on November 4, 2022, as legal counsel for Children. However,

_____

[5] However, at a November 3, 2022 proceeding, almost 10 months later, the court acknowledged the following:

> [I]n a circumstance where there is a contest going on, we have to appoint a guardian *ad litem* for the [Children], and, potentially, a legal interest attorney as well. This complicates this.

> \* \* \*

> The first step would be that of a [g]uardian *ad litem*. **If the [g]uardian *ad litem* determines** that either child[] ha[s] an intended outcome and that differs from what the [g]uardian *ad litem* would be supporting, that triggers the need for the legal interest attorney.

> It's a two-step process. We'll get a [g]uardian *ad litem* on board first. You can obviously[] inform stepmom and dad that they will be hearing from an attorney that would like to speak to the children in private.

N.T. Proceeding, 11/3/22, at 10-11 (emphasis added).

on April 20, 2023, Attorney Shank was removed as legal counsel for A.G.R., when it became apparent that Children's legal interests diverged. *See* N.T. Termination Hearing, 11/22/22, at 6 (Attorney Roland stating "early on **I thought** I could do both[, **I later**] **thought** there was a conflict" between A.T.R.'s best interests and legal interests) (emphasis added).[6]

In **K.M.G.**, *supra*, our Supreme Court addressed the appointment of counsel to represent children in contested termination of parental rights proceedings, with a focus on the trial court's role in appointing an attorney to represent the child's legal interest and an appellate court's scope of review of those appointments. The Court concluded that "while an appellate court should verify that the orphans' court appointed counsel to represent the child's legal interests, it may not assess *sua sponte* the performance of that representation." **Id.**, 240 A.3d at 1223. In reaching its holding, the Court made the following pronouncements specifically with regard to the trial court's role in such matters:

> [W]here an orphans' court has appointed a GAL/Counsel to represent both the child's best interests and legal interests, **appellate courts should review *sua sponte* whether the orphans' court made a determination that those interests did not conflict**. We emphasize that appellate review of this

---

[6] Then, because A.G.R.'s legal interests aligned with her best interests, Attorney Roland was appointed to represent A.G.R.'s legal interests. **See In the Int. of H.H.N.**, 296 A.3d 1258 (Pa. Super. 2023) (where child's legal and best interests do not diverge in termination proceeding, attorney-GAL representing child's best interests can also fulfill role of attorney appointed under section 2313(a) to represent child's legal interests).

question does not involve second-guessing whether GAL/Counsel[,] in fact[,] had a conflict . . . as discussed in the next section of this opinion, but solely **whether the orphans' court made the determination in the first instance.**

\* \* \*

Accordingly, in fulfilling its duty under [s]ection 2313(a) as construed by this Court, **the orphans' court must determine whether counsel can represent the dual interests before appointing an individual to serve as GAL/Counsel for a child**. Given the essential nature of the GAL/Counsel's ability to represent a child without conflict and **this Court's mandate that the orphans' court make that determination prior to appointment**, we conclude that appellate courts should verify that the orphans' court indicated that the attorney could represent the child's best interests and legal interests without conflict.

*Id.* at 1235-36 (emphasis added).

Here, the Orphans' Court delegated its prescribed role of determining whether counsel could represent the dual interests of Children to Attorney Roland.[7]  **See** N.T Termination Proceeding, 11/22/22, at 8 (Attorney Roland stating to A.T.R. that she "represent[s] what [she] think[s] is best," to which trial judge responded, "Whatever you think it best."). This is in direct contravention of Supreme Court precedent mandating that such a

_____

[7] We note that the mandated appointment of counsel for children in contested termination cases is satisfied by the appointment of a guardian *ad litem* who is an attorney. **See L.B.M.**, *supra* at 174. Interestingly, however, the court's appointment of Attorney Roland was specifically stated to fulfill the role of guardian *ad litem*, not legal counsel, the latter of which is mandated in section 2313(a). Thus, based on the language in the court's order, it appears that the court intended her to act as a guardian *ad litem* advocating for Children's best interests.

determination is to be made by the Orphans' Court "in the first instance." *Id.* at 1236. Thus, in light of our duty to conduct a limited *sua sponte* review of the matter, *id.* at 1223, we must reverse and remand to the Orphans' Court to comply with the procedure as set forth in *K.M.G.* prior to appointing a GAL or counsel for Children and holding a new termination proceeding.[8] *See In the Interest of K.N.L.*, 284 A.3d 121, 151 (Pa. 2022); *see also L.B.M.*, *supra* at 183 ("In . . . t[ermination of] p[arental] r[ights] cases[,] critical rights are at stake. . . . [O]ur General Assembly has decided that counsel for the child is required because of the primacy of children's welfare, the fundamental nature of the parent-child relationship[,] and the permanency of termination.").

Decrees reversed. Case remanded to Orphans' Court for hearing *de novo* and proceedings consistent with this decision.[9] Jurisdiction relinquished.

---

[8] We are also mindful of the fact that at least one hearing was started in the matter on March 15, 2022, prior to Attorney Shank being appointed as Children's legal counsel, where Attorney Roland presumably represented Children. Again, we question whether Children's legal and best interests were in conflict at that point, a question that should have been determined, prior to any proceeding, by the trial court.

[9] Because we are remanding the matter, we need not reach the merits of Mother's issues on appeal.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/2/2024