J-S30043-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: I.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.P.M., FATHER | : | No. 128 WDA 2018 |

Appeal from the Order December 20, 2017
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000006-2017

| | | |
|---|---|---|
| IN RE: N.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.P.M., FATHER | : | No. 129 WDA 2018 |

Appeal from the Order December 20, 2017
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000007-2017

BEFORE:    BENDER, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:               **FILED JUNE 07, 2018**

A.P.M. (Father) appeals from the orders entered on December 20, 2017, involuntarily terminating his parental rights to I.M., born in July 2013, and N.M., born in November 2015 (Children, collectively).  We affirm.

We summarize the factual background of this case based upon the findings of fact made by the orphans' court and our review of the record. Shortly after her birth, I.M. came to the attention of Allegheny County Office of Children Youth and Families (CYF) because B.M., Children's mother (Mother), admitted to using benzodiazepines during her pregnancy.  On

*Retired Senior Judge assigned to the Superior Court.

October 7, 2013, CYF removed I.M. from the care of Mother and Father pursuant to an emergency custody authorization. Mother had relapsed and Father was unable to care for I.M. due to his working out of town. On November 15, 2013, the juvenile court adjudicated I.M. dependent pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6301-6375, and returned I.M. to Mother's care. Mother was not living with Father at the time; she was residing at an inpatient program. Father was not cooperative with CYF; he refused to provide urine screens and was nonresponsive to CYF's calls.

On July 20, 2015, I.M. was removed for a second time via emergency custody authorization. The police took custody of I.M. after Mother was arrested for shoplifting and Mother had left I.M. unsupervised. I.M. was not placed with Father because he had not cooperated with CYF, he barely had visited her, and he had been arrested multiple times, resulting in incarceration and/or placement in the Renewal Center.

In November 2015, CYF obtained an emergency custody authorization upon N.M.'s birth. Mother gave birth to N.M. while incarcerated, and Father still was not cooperative with CYF, had not visited I.M. in almost a year, and had not attended any drug screens since February 2015. N.M. was adjudicated dependent on January 6, 2016. At that time, CYF had concerns about Father's sobriety. Father was living in Mother's old home, which was the source of drug activity. On the same day as N.M.'s dependency adjudication, the juvenile court made a finding of aggravated circumstances

against Father due to his failure to have contact with I.M. for thirteen months. The court also relieved CYF of making reasonable efforts towards reunification.

I.M. has resided in the same foster home since August 2015. The foster home is a kinship placement; the foster mother, J.M. (Foster Mother), is the mother of Children's cousins. N.M. joined her sister in the foster home upon her discharge from the hospital after birth.

Throughout Children's time in foster care, Father failed to make sufficient progress to rectify the issues that prevented him from caring for Children. Father struggled with sobriety and never obtained stable housing. Throughout the case, Father was incarcerated multiple times for drug-related offenses. At the time of hearing, Father was on probation and had been released only recently from the ACTA program, which is a residential drug and alcohol treatment program through the criminal justice system. Father never participated in Children's health and dental care. He did not remain in consistent contact with CYF. Most egregiously, Father did not take advantage of the visitation opportunities provided by CYF. Father has not had a verifiable, approved visit with I.M. since December 5, 2014. He never has had a verifiable, approved visit with N.M.[1]

_____

[1] Father contends he had sporadic contact with Children sometime in 2016 while they were visiting Mother.

CYF filed petitions to terminate involuntarily Father's parental rights to Children on January 23, 2017.[2] The orphans' court presided over a hearing on September 8, 2017. Children were four years old and 22 months old at the time of the hearing. Three witnesses testified: the CYF caseworker assigned to the family; Dr. Neil Rosenblum, a psychologist who conducted evaluations regarding the family; and Father. On December 20, 2017, the orphans' court terminated Father's parental rights to Children.[3] This appeal followed.[4]

Father presents one issue for this Court's consideration:

[1.] Whether the [orphans' court] abused its discretion and/or err[ed] as a matter of law by determining that termination of

---

[2] Subsequent to CYF's filing of the petition, Children's dependency guardian *ad litem*, Lynne Sherry, Esquire, filed a motion informing the court of her belief that there was no conflict between Children's best and legal interests and requested that she be appointed to represent Children as legal counsel in the termination of parental rights proceeding pursuant to ***In re L.B.M.***, 161 A.3d 172 (Pa. 2017). On May 13, 2017, the orphans' court entered an order appointing Sharon Profeta, Esquire, as separate legal counsel for Children. Although Attorney Sherry requested to continue representing Children as guardian *ad litem* in the event that the court appointed separate legal counsel, it is unclear from the order whether the court intended to permit Attorney Sherry to do so. However, we find no further record of Attorney Sherry's participating in the case, and thus we assume that only Attorney Profeta represented Children. Attorney Profeta filed proposed findings of fact supporting termination of Father's parental rights in the orphans' court and a brief in this Court supporting the same.

[3] The orphans' court also terminated the parental rights of Mother after confirming the consent to adoption Mother signed pursuant to 23 Pa.C.S. § 2504. Mother has not filed her own appeal or participated in this appeal.

[4] Both Father and the orphans' court complied with Pa.R.A.P. 1925.

- 4 -

Father's parental rights would meet the needs and welfare of [Children] under [sub]section 2511(b), in spite of testimony from Father that a strong bond exists between [Father and Children].

Father's Brief at 7 (suggested answer omitted).

We begin with our standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child….

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007).

- 5 -

Here, the orphans' court determined that CYF met its burden under subsections (a)(1), (a)(2), (a)(5), (a)(8), and (b) of 23 Pa.C.S. § 2511. Father only challenges the determination of the orphans' court regarding subsection 2511(b). That subsection provides as follows.

> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) … or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Unlike subsection 2511(a), the focus of subsection 2511(b) is exclusively on the child. *In re M.T.*, 101 A.3d 1163, 1181 (Pa. Super. 2014) (*en banc*). Judicial inquiry of the needs and welfare of the child examines "the effect of parents' actions or omissions upon the child" to determine whether the parent is meeting the child's developmental, physical, and emotional needs. *In Interest of Coast*, 561 A.2d 762, 767 (Pa. 1989) (*en banc*).

"[Subs]ection 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act." *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa. Super. 2018). However, case law requires

the court to determine whether the parent and child have an emotional bond, the nature of such a bond, and the effect upon the child of permanently severing the bond. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The mere existence of an emotional bond does not preclude the termination of parental rights." *In the Matter of the Adoption of M.A.B.*, 166 A.3d 434, 448 (Pa. Super. 2017). Rather, "courts must examine whether termination of parental rights will destroy a 'necessary and beneficial relationship,' thereby causing a child to suffer 'extreme emotional consequences.'" *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa. Super. 2018) (citing *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1992)).

While the bond between parent and child is a major aspect of the subsection 2511(b) analysis, it is nonetheless only one of many factors to be considered by the court when determining whether termination serves the child's needs and welfare. *M.A.B.*, 166 A.3d at 448. Courts may "equally emphasize the safety needs of the child." *Id.* Courts should also consider "the love, comfort, security, and stability the child might have with the foster parent." *Id.*

In the instant case, the orphans' court determined that

[Father] has not met any of [Children's] educational, psychological, or developmental needs since the date [Children] were born. [Father] has not in any reasonable or meaningful way attempted to support, connect, or maintain a consistent or affirmative relationship with [Children]. When considering the record as a whole, including the history in this case, the conduct of [Father], and journey of [Children] since birth, this [c]ourt

- 7 -

accordingly finds that [Father's] assertion and position he advances … amounts [*sic*] to a measure that is too little, too late.

Orphans' Court Opinion, 12/20/2017, at 9.

Based upon Father's lack of contact with Children and the observations of the caseworker and Dr. Rosenblum, the orphans' court determined that Children do not have a bond with Father. *Id.* Accordingly, the orphans' court found that termination of Father's parental rights would not be detrimental to Children, because it would allow them to proceed towards permanency through adoption by Foster Mother, to whom Children are bonded and who has met Children's needs and welfare throughout their time in foster care. *Id.* at 11.

In his brief, besides recounting the basic case law, Father's entire argument consists of the following:

> Father admitted to the court in his testimony that he may not have been the father he was supposed to be for [Children], but it was due to his addiction. He took responsibility for his shortcomings, and described to the court what steps [he had] taken to rectify the situation.
>
> Father is aware that he can never reclaim the time he spent apart from [Children], but feels that he is now in a better position to parent [Children]. He professed his love for [Children] and simply believes that he should have the opportunity to regain custody of them.
>
> The only way to ensure continued contact between [Children and Father] is to allow Father to maintain his parental rights. Therefore, the possibility of future contact between Father and [Children], which contact best serves [Children's] needs and welfare, is in jeopardy unless Father's parental rights

> are reinstated. The decision of the trial judge is not supported by the record and should be reversed.

Father's Brief at 12-13 (record citations omitted).

After review, we conclude that the record amply supports the orphans' court's findings and conclusions. "[A] parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re T.M.T.*, 64 A.3d 1119, 1128 (Pa. Super. 2013). Moreover, Children's lives cannot be put on hold "in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re C.L.G.*, 956 A.2d 999, 1007 (Pa. Super. 2008) (*en banc*). I.M. has been in foster care most of her life; N.M. has been in foster care her entire life. While Father has struggled with his addiction and criminal troubles, Foster Mother has been meeting Children's needs on a daily basis. This has resulted in Children developing a strong, meaningful, and primary attachment to Foster Mother, which, according to Dr. Rosenblum, is the foundation of their emotional well-being. N.T., 9/8/2017, at 54. Based upon their observations and training, both Dr. Rosenblum and the caseworker believe Children view Foster Mother as their psychological parent, whereas Children do not have a bond or relationship with Father. *Id.* at 41, 43, 54, 59-61, 63, 66-67. It is apparent that Foster Mother is Children's main source of love, comfort, stability and security and Children do not have a necessary and beneficial relationship with Father. *See In re D.A.T.*, 91 A.3d 197, 208 (Pa. Super. 2014).

"Therefore, we agree with the court that the bond between [Children] and [Foster Mother] is the primary bond to protect, given [Children's] young age and [their] very limited contact with [Father]." ***In re K.Z.S.***, 946 A.2d 753, 764 (Pa. Super. 2008). Thus, the orphans' court did not err or abuse its discretion in terminating Father's parental rights.

Orders affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/2018